Syllabus.

---

## EDWARD SCHRADER *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Murder. Jurors. New trial.*

   If a juror on his *voir dire* states that he had formed and expressed an opinion as to the guilt of the accused, but that his opinion was not fixed and would not affect his verdict, and the accused does not offer to challenge him either for cause or peremptorily—his peremptory challenges not having been exhausted—he will not after conviction be granted a new trial because the juror had before being empaneled expressed the opinion that the accused ought to be convicted.

2. SAME. *Conflicting evidence.*

   The finding by the trial court on a motion for a new trial that a juror was not hostile to the accused will not be reversed where the testimony on the subject is conflicting.

3. SAME. *Instructions. Already given.*

   It is not error to refuse an instruction the substance of which has already been given in another instruction.

4. SAME. *Previous difficulty. Third parties. Evidence.*

   Evidence is admissible in a murder case of a difficulty, prior to the killing, between decedent and a third party, although defendant was not present when it occurred, if it tend to prove that the defendant, taking the part of the third person, forced deceased to engage in the difficulty in which he was killed by defendant.

5. SAME. *Instruction.*

   Where the defendant shot and killed the deceased he is not entitled to an instruction telling the jury to acquit if they believe from the evidence that defendant insulted and struck deceased and thereupon deceased shot defendant and defendant then killed deceased, failing to negative the idea that defendant provoked the difficulty with intent to overcome deceased.

6. SAME. *Improper argument.*

   The language of the prosecuting attorney in his closing argument on a trial for murder, to the effect that he would show how people regarded the accused, and that policemen, knowing his past, did not try to stop him after the killing, did not constitute reversible error, though no evidence was introduced as to the character of accused.

FROM the circuit court of Washington county.

HON. A. McC. KIMBROUGH, Judge.

Schrader, the appellant, was indicted, tried, and convicted of murder, and appealed to the supreme court.

The evidence showed that one Connelly, early in the night, had a difficulty with one Anderson, and ordered him to keep out of his dramshop; that Anderson, after leaving, returned to the dramshop, and he and Connelly got into a fight, and were separated; at about the time they were separated, Schrader came in, and urged Anderson to fight Connelly, at the same time hurling some abusive epithets at Connelly; that Connelly made no reply, but walked out of the dramshop, leaving Schrader inside; that it was proposed by some one in the crowd that Connelly and Schrader retire to the back yard and fight it out; Schrader and Anderson and some others did go into the back yard, and stayed there a short time, but Connelly did not go; that when these men came back and got near to where Connelly was standing, Schrader approached Connelly, and abused him, saying, "I will fight you myself," and struck at Connelly; that both Schrader and Connelly started to shooting. The evidence is conflicting as to which shot first. Schrader was wounded and Connelly was killed. The defendant objected to the introduction of the testimony which refers to the difficulty between Anderson and Connelly before Schrader came in, because Schrader was not present, and there was no conspiracy shown to exist between Anderson and Schrader.

No evidence was introduced as to the character of defendant, and the language of the prosecuting attorney, made in his closing argument, and objected to by the defendant, is as follows: "I want to take the prisoner here, and walk with him and you that night, and show you how the people regarded him." "Knowing his past, the policemen did not try to stop Schrader." It is urged by appellant that these remarks were a successful

effort on the part of counsel to place in evidence the character of the defendant as being bad, when there had been no testimony as to his character.

The ninth instruction asked by the defendant, and refused by the court, is as follows: "Instruction No. 9. The court instructs the jury, for the defendant, that no words nor assault with the fist alone will justify the taking of human life, and even if the jury believe from the evidence in this cause that the defendant, Schrader, used insulting language to and struck at deceased, yet they will acquit the defendant if they further believe from the evidence that, at the time that the defendant undertook to strike deceased, deceased shot defendant, and defendant, being so shot, drew his pistol and fired and killed deceased, believing himself to be in actual or apparent danger of losing his own life, or of having some great bodily harm done him."

*Jayne & Watson,* for appellant.

The court below erred in permitting evidence to be introduced with reference to the first difficulty between Connelly and Anderson. From the beginning of such testimony to the ending of the state's evidence appellant interposed and insisted that any evidence with reference to a difficulty between Anderson and Connelly was inadmissible, because appellant was not present at such difficulty, and, further, because there was no conspiracy shown to exist between Anderson and the appellant. It was clearly the purpose of the state, in introducing this testimony, to create the impression that appellant was present at Connelly's dramshop for the purpose of aiding in a difficulty with Connelly. It is unjust to appellant that evidence tending to show his attack upon Connelly was premeditated by the introduction of evidence of what was said and done when he was not present, no conspiracy having been shown to exist. No authority is required to sustain this proposition.

During the prosecutor's argument exceptions were made to his speech. Once when he said, "I want to take the prisoner

here and to walk with him and you that night and show you how people regarded him," was nothing more nor less than a successful effort on the part of counsel to place in evidence the character of a man as being bad, when there had been no testimony as to character. True it is, counsel says that what he did say was that he was going to show from the evidence in the case and the testimony of witnesses before the jury, etc. But how could this help his cause, when there had been no evidence before the jury of character? We think under the testimony a new trial should have been granted to appellant, by reason of the fact that the juror, Mann, when he qualified as a juror, did so knowingly and corruptly. There can be no question, after he was subpoenaed and before he was examined on his *voir dire,* that he had stated to Calhoun and young Jayne what his purpose and intentions were—viz., to send Schrader to the penitentiary, which he was successful in doing. It is true, he disputed what these young men said, but the weight of evidence is entirely against his statement.

Under the facts of this case we do not believe that appellant should have been convicted of murder. The testimony is overwhelming that Connelly fired the first two shots, had shot Schrader nigh unto death, and that Schrader never fired on Connelly until he, Schrader, had received two terrible wounds. The testimony of everybody on the scene, except McLoughlin (who says that somebody else rather than Schrader shot Connelly) and two lewd women, all agree that Connelly fired first. The policeman, the captain of the police, and every other witness who saw the shooting, agreed that Connelly fired the first two shots. Captain Quinn says that when he begged Connelly to go off, Connelly said that he could take care of himself. It is true that Schrader was the beginner of the difficulty with Connelly, but it must be remembered that he only struck at Connelly with his fists, which did not deny Schrader the right of self-defense when Connelly assaulted him with a deadly

weapon. *Prine* v. *State,* 73 Miss., 838; *Smith* v. *State,* 75 Miss., 542, 630.

*William Williams,* attorney-general, for appellee.

As to the action of the court in admitting testimony of Frank Dorsey in regard to first difficulty between Anderson and Connelly: Schrader came in at an opportune moment of the second difficulty. Anderson had left the dramshop after the first difficulty and had returned. Connelly saw him in his house again and reminded him to stay out. The two clinched when these words were spoken, and the witnesses say Schrader appeared as they were being separated, or, as one witness says, while they were still clinched. The time is estimated by one witness as a half of a minute from the clinching till Schrader's appearance. As soon as Schrader appeared he began to urge Anderson to fight Connelly, saying he, Schrader, was Anderson's friend, and would back him. The witnesses say that Schrader seemed mad at that time. It seemed that Schrader had heard something besides the immediate row to stir his anger. His remarks were prompted by the information that his friend Anderson had been ordered out of the dramshop a short while before. Hattie Dozier says that Schrader, Nelson, Cloom, and Anderson passed her house just before they got to Connelly's dramshop immediately before the tragedy, and that they were talking excitedly and she heard some voice from the crowd say, "Go over there and fight Neill." These men were, at that time, evidently talking about the previous difficulty, and it was that which made them talk excitedly. They went immediately to the dramshop, and Anderson went into the house out of which the owner had ordered him to stay, and the other men, it seems, held back until the fight was begun by Anderson.

This testimony was competent to show the purpose with which Schrader went to the dramshop—namely, to champion the cause of his friend. His friend was backward, it appears; and no match for Connelly, at least he did not measure up to

Schrader's exacting standard of aggressiveness. There was nothing improper in the remarks of prosecuting counsel, and they are all within the bounds of legitimate argument. *Cavanah* v. *State,* 56 Miss., 299.; *Martin* v. *State,* 63 Miss., 505.

In addition to this, even if the remarks had been beyond the scope of legitimate argument, the verdict of the jury was clearly supported by the testimony before it, and not influenced by any improper argument. *Hemingway* v. *State,* 68 Miss., 371; *Lamar* v. *State,* 63 Miss., 265.

Argued orally by *J. M. Jayne,* for appellant, and by *LeRoy Percy,* for appellee.

TRULY, J., delivered the opinion of the court.

Four assignments of error are pressed on our consideration, and relied on by appellant to obtain a reversal of the judgment by which, upon a conviction of murder, he was sentenced to the penitentiary for life. We will consider them in the order in which the occurrence or ruling on which they are based, respectively, arose during the progress of the trial:

1. The first assignment is that appellant did not have a fair and impartial jury, in that after the trial it developed that one of the jurors (Mann) had previous to the trial expressed the opinion that the appellant should either be hanged or sent to the penitentiary, and that neither the appellant nor his counsel was advised of this. It is, of course, true that if a juror, upon his *voir dire,* corruptly conceals an opinion then resting on his mind as to the guilt of the defendant, and is, by reason of this concealment, accepted as a juror by the defendant, this alone will in many cases cause a reversal of the cause. But the record now before us shows that, when examined as to his competency, this juror fairly and frankly stated to the court and counsel that he had both formed and expressed an opinion as to the guilt or innocence of the accused, but he further stated that this was not a fixed opinion, and would not affect him in arriving at his

verdict after hearing the evidence; that he had conscientious scruples as to the infliction of the death penalty, and would not like to be on a jury that would hang a man. This was a full disclosure on his part, and advised the appellant and his counsel of the mental attitude then occupied by the juror. It is not contended that the appellant sought or desired to challenge the juror either peremptorily or for cause, and it is conceded that he did not exhaust the challenges granted him by law. In addition to this, the trial judge had this question presented for decision by the affidavits and testimony taken in support of the motion for a new trial. He also heard the denial of the alleged statement by the juror, and, upon full consideration of these conflicting statements, he upheld the competency, veracity, and impartiality of the juror, and refused to sustain the motion. We cannot, on the showing here made, disturb this finding of fact. *Lipscomb* v. *State,* 76 Miss., 256 (25 South., 158); *Green* v. *State,* 72 Miss., 522 (17 South., 381). This assignment therefore cannot be sustained.

2. The second ground of error insisted on is that it was error in the trial court to permit the state to prove that the same night, and a short time before the killing, there had been a difficulty between Connelly, the deceased, and one Anderson. An inspection of the record, as a whole, makes it manifest that this testimony was clearly relevant and admissible. Without the knowledge of this fact before the jury, the language and conduct of appellant would have been inexplicable; but, advised of this, it became evident that appellant on this occasion was actuated by his friendship for Anderson, and a seemingly determined design to take his part of the quarrel and force Connelly to engage in a difficulty with him personally. This testimony shed light upon the occurrence, tended to sustain the theory of the prosecution, and enabled the jury to correctly and justly weigh the conduct of the actors and to judge of their motives. For these reasons, it was plainly competent. Wharton, Crim. Ev., secs. 23, 24.

3. The third assignment of error is that the court erred in refusing the ninth instruction asked by the appellant. This action of the court was proper, upon two distinct grounds: First, the same principle of law embodied in the instruction refused was granted to the appellant in two other instructions given to the jury in his behalf; second, the instruction was in itself erroneous and inaccurate, and charged the jury that they should acquit the defendant, even though they believed that he killed the deceased in a difficulty in which he was the aggressor, while armed with a deadly weapon, and without negativing the idea that defendant provoked the difficulty with the intention of using the deadly weapon for the purpose of overcoming his adversary; and this limitation must be expressed in an instruction which correctly presents the legal theory which was here sought to be announced.

4. The remaining assignment is predicated of the language alleged to have been used by the prosecuting counsel in the court below, and, in considering this, we are not unmindful of the fact that words from an attorney so gifted and eloquent as the gentleman who protected the interest of the state would probably have great weight with the jury. But we are unable to see that the language complained of was in any way objectionable or unfair to appellant; that it infringed upon the rule, or was a violation, in any degree, of the privileges of counsel. Viewed in the light of the whole record, and waiving the conflict as to the exact expressions used, the line of argument indicated by the remarks excepted to, even if carried to its just and logical conclusion, would have been unobjectionable. Manifestly, therefore, it could not possibly constitute error when it was stopped, before fairly begun, by the objection of counsel for the appellant. The language employed does not come within any of the classes of argument condemned by this or other courts of last resort. It was not a misstatement of testimony. It was not an attack or an unauthorized reflection upon the character of the defendant, nor was it an appeal, direct or implied, to the pas-

sions or prejudices of the jury. It was legitimate comment on the proven facts attendant upon the homicide. There are no hard-and-fast limitations within which the argument of earnest counsel must be confined, no well-defined bounds beyond which the eloquence of advocates shall not soar; and we find in this record no evidence that the speech under review in any manner trenched upon the proprieties or did any violence to the ethics of advocacy.

We have given each of the assignments of error urged on behalf of appellant earnest and painstaking examination. We have considered carefully the case here presented in all its phases. We find no error of law, and the record furnishes no reason for a belief that any verdict more lenient to appellant could or should be reached by a fair and impartial jury on any trial. The law was correctly expounded, and the verdict is amply supported by the proof.

*Affirmed.*