OMAR SMITH *v.* STATE.

[60 South. 330.]

1. CRIMINAL LAW. *Jurors. Challenge. Refusal to continue Trial. In-structions. Reasonable doubt. Verdict. New trial. Impeachment of juror. Code 1906, sections 1508, 2685. Indictment.*

Where, after the beginning of a trial for murder.and one witness was being examined, one of the jurors received .a dispatch announcing the serious illness of a member of his family and both sides agreed to excuse him and defendant then requested that the court retain the remaining eleven jurors, it was not reversible error for the court to enter a mistrial, discharge the jury and award a new special venire on request of the state.

2. CRIMINAL LAW. *Challenge for cause. Code 1906, section 2685.*

Under Code 1906, section 2685, so providing, the exclusion of a juror from a panel for cause is not assignable as error.

3. INDICTMENT. *Amendment. Christian name of accused.*

Under Code 1906, section 1508, so providing the court may allow an amendment to an indictment, so as to change the real Christian name of accused.

4. CONTINUANCE. *Witness. Impeachment.*

A judgment will not be reversed and a new trial granted, the only effect of which would be to enable an appellant to impeach the credibility of a witness.

5. CRIMINAL LAW. *Misleading instructions.*

An instruction for the state in a murder trial that "the jury did not have to know, that accused is guilty before they can convict, but it is only necessary, that they believe from the evidence beyond a reasonable doubt that he is guilty," is not misleading, because omitting .the grade of the crime, when that is covered by other instructions.

6. CRIMINAL LAW. *Instructions. Reasonable doubt.*

An instruction for the state in a trial for murder, that the jury may not hunt for doubts, ·or indulge in conjectural doubts, but the doubts that ought to make the jury pause must be reasonable doubts and arise out of the evidence or want of evidence, and that they need not know that accused is guilty to convict him, and

should not hesitate to convict before being able to say, outside of the evidence, that he might be innocent; but after considering all of the evidence, if they believe beyond every reasonable doubt that he is guilty, they must find him guilty, is not objectionable as attempting to define a reasonable doubt, or to lessen either the quantity of evidence or degree of proof required for conviction.

·7. CRIMINAL LAW.   *Juror.   Impeaching verdict.*

A juror will not himself be permitted, even under oath in open court to impeach his verdict, and for much greater reason he should not be permitted to impeach it indirectly, by making statements relative thereto to third persons out of court and not under oath.

8. CRIMINAL LAW.   *New Trial.   Verdict.   Impeachment by juror.   Evidence.*

The finding by a trial court on a motion for a new trial that a juror was not hostile to the accused, will not be reversed, where the testimony on the subject is conflicting and such finding is not clearly and manifestly wrong.

APPEAL from the circuit court of Choctaw county.

HON. G. A. McLEAN, Judge.

Omar Smith was convicted of murder and appeals.

Among other errors assigned is the action of the court in giving instructions numbered 8 and 11, requested by the state.

"(8) The court charges the jury that they do not have to know that the defendant is guilty before they can convict him.   It is only necessary that they should believe from all the evidence in the case beyond a reasonable doubt that he is guilty, and if they do believe from all the evidence in this case, beyond a reasonable doubt, that the defendant is guilty, then it is the sworn duty of the jury so to find."

"(11) The court charges the jury, for the state, that in trying this you should not hunt for doubts, with the view of finding any excuse or apology for your verdict, nor should you indulge in such doubts as are merely conjectural or chimerical; but the doubts which ought to make you pause and hesitate must be reasonable doubts,

and they must arise out of the evidence or for the want of evidence in this case.    You are not required by the laws of this state to know the defendant is guilty of the crime charged against him before you can convict him, and you should not hesitate to find that he is guilty before you are able to say, outside of the evidence, that he might have been innocent; but after carefully considering all the evidence in the case, if you believe beyond every reasonable doubt that he is guilty, you should discharge your duty fearlessly ·under  your oath and under the law, and say so by your verdict."

*R. N. Miller* and *L. M. Adams*, for appellant.

At the trial of this case a jury was selected and one witness,· Doctor Kilpatrick, examined partially, that is, he was asked a half dozen questions.    In the selection of this jury the defendant had exhausted only five of his peremptory challenges, and the state about an equal number, when a telegram was received for one of the jurors, T. E. Smith, notifying him that his son was very ill at home and to come quick.    Thereupon it was agreed between the defendant and the state that the juror Smith should be excused, which was done.

The defendant then demanded that the remaining eleven jurors remain in the box, and one man selected to fill the place of the juror Smith, the defendant waiving all right to have the eleven retendered to him, or to challenge any of them,  and demanded that the eleven remain as already selected, and that another juror be selected in the selection of which juror the defendant would exercise only his remaining unexhausted peremptory challenge of seven, and the state having its unexhausted peremptory challenges.   In other words, the defendant demanded to proceed with the eleven already selected and fill Smith's place just as though Smith had never been selected, and thus to complete the jury.

This the court overruled, and over the defendant's objection and protest, entered a mistrial, all of which is shown by the defendant's first special bill of exceptions.

And thereupon the court awarded on the 2nd of February, 1912, a new special venire at the instance of the state and on the 23rd day of February, 1912, proceeded to organize a second jury to try the defendant, and at this time the defendant again demanded that he be tendered the eleven jurors remaining after the juror Smith had been excused on the 23rd day of February, which had already been empaneled, to be used in empaneling the new jury, and this demand the court overruled, as shown by the defendant's second special bill of exceptions.

In empaneling this second jury a juror, by name McQuirter, was thoroughly examined by counsel on both sides, and by the court, and was pronounced by the court to be thoroughly qualified in all respects, except that it was disclosed by him, McQuirter, that he had married a second cousin of an uncle of the deceased by marriage. The defendant at this time had exhausted all of his peremptory challenges. The state thereupon objected to McQuirter and challenged him for cause, and the court sustained this challenge for cause and dismissed McQuirter, over the defendant's objection. At this time, we repeat, the defendant had exhausted all of his peremptory challenges, and the state had not.

As to the procedure of the court in ordering a new trial when the juror Smith was excused, we assume that this was done by the court under a misapprehension of the trial rule, by a misunderstanding of the court of the *State* v. *Dennis*, 96 Miss. 96.

In that case, after all the testimony had been offered, practically, and the juror became insane, the defendant demanded that a mistrial be entered, and a trial *de novo* awarded, and this the court held, in that case, should have been done, and put that deliverance partially on the ground that all the testimony before the first jury was not

begun anew and offered over again after the new juror
had been selected.     That is all the court decided in this
case.     In other words, the court held that the proper
practice was when the evidence has all been offered to
enter a mistrial and award a new trial, where one juror
is excused, on the objection of the defendant.

But in two other cases, to wit: *Jefferson's case*, 52 Miss.
767 and *Robert's case*, 72 Miss. 728, this court held, and
that too, over objection made by the defendant that where
only one witness had been examined or started to be exam-
ined, and one juror had been excused, that the proper prac-
tice was to proceed with the eleven and substitute the one
juror, and go on.     Now, this was what was done, in the
*Dennis case, supra*, and what the court, in my humble
judgment, ought to have affirmed.     See 17 Am. &
Eng. Ency. of Law, section 1258 where the true rule is
stated, and all our own decisions of *McGuire* v. *State*,
*Jefferson* v. *State*, and *Roberts* v. *State* are cited.

The court will observe that it was a clear error, and
ought to reverse this case to refuse to substitute a juror
in Smith's place, and go on with the jurors first selected,
where the defendant was demanding that this practice
be pursued.     And particularly is this true when it further
appears, as in this case, from the record, that the defend-
ant did not get a fair and impartial jury in the second
jury that was empaneled and tried the case, and in the
selection of which the defendant had exhausted all of his
peremptory challenges before the jury was empaneled.
And we respectively submit that this procedure of the
court which arbitrarily deprived the defendant of a fair
and impartial jury ought to reverse this case.

This is not a technicality, but is a substantial invasion
by the court of the defendant's constitutional guaranty
of a fair and impartial trial by an impartial jury.     As to
the court's ruling in sustaining the state's challenge "for
cause" to the juror McQuirter, this is an error of similar
character.     McQuirter, remember, was the husband of

the second cousin of the uncle by marriage of the deceased, as shown by the record.   Now, what kin was he to the dead man?   The rule of computation is by the civil law, and he could not be figured out to be closer than related by double affinity in the eighth or tenth degree, and the rule is equally well settled that beyond the fourth or fifth degree, collaterally, the law recognizes no relationship whatever.

So it is, that after exhausting our peremptory challenges we were thus arbitrarily deprived of McQuirter as a juror on the challenge of the state for cause, for relationship that did not exist.   *Loman v. State*, 50 So. 43; *L. & N. R. Co.* v. *Hollorn*, 55 So. 1003.

We come, now to the assignment of error, predicated of the fact, as shown by our motion for new trial and the evidence taken on its hearing, that the juror Elliott, who sat and tried the case was thoroughly examined by the court touching his qualifications as a juror and he disclaimed ever having heard of the case or having any opinion about it, and thus on his *voir dire*, concealed the fact that he was a biased and prejudiced juror.

The testimony taken on the hearing of the motion for a new trial was, the affidavit of R. N. Miller and L. M. Adams, who stated that they and all the attorneys for the defendant, were in total ignorance of the prejudice or bias of the juror Elliott, and also the affidavit of the defendant that he was likewise ignorant of the fact that Elliott had formed an opinion and prejudged his case until after the verdict had been rendered, and also the affidavits of Blackwood and Taylor, who testified that immediately after the verdict was rendered that they met Elliott at Blackwood's house, and he there proceeded to state to them that he, the juror Elliott, was present at Ackerman at the last term of the court, when this case was called, and that he heard detailed statements of the facts in this case and that he knew all about the facts in the case when he was summoned as a juror in the case at

this term, but that neither the court nor counsel asked him if he had heard the facts or knew of the case and proceeded to tell them that he thought the defendant was guilty and his mind was fully made up when he was selected on the jury to convict the defendant regardless of the proof. And in that conversation he told them that he was opposed to killing and would convict any man who killed another regardless of the circumstances of the case, and when they asked him about the proof, he admitted that the proof showed that the deceased struck the defendant with a pair of brass knucks, but stated that the defendant ought to have been convicted and hanged anyhow.

The full examination of these witnesses, Blackwood and Taylor, before the court shows the same thing. The defendant further offered the certificate of the clerk. That the juror Elliott was a member of the regular jury number one at the special term in October, 1911, of this court.

The state introduced the juror Elliott who denied that he told the witness Blackwood and Taylor, as they say, but admits that he told them "I had my mind made up when I left my chair," etc., and he admits that he had a conversation with Dobbs, the deputy sheriff, who went to summon him to testify on the hearing of the motion for new trial and he admits that Mr. Pinson, one of the attorneys for the prosecution went out to see him between the time of the rendition of the verdict and the time he was summoned as a witness on the hearing of the motion for new trial. His testimony shows that he had been prepared for the examination.

This juror first denied that he had a conversation with Dobbs but then admits that he had this conversation with him. Now Dobbs testified for the defendant that when he went out to summon Elliott when he rode up to Elliott's house and summoned Elliott, Elliott said to him, "I know what it is for—that is for what he was supposed to have told two men on the railroad track when he was going

home Saturday night after the verdict in the Smith case was rendered." And then he proceeded to tell Dobbs that he did tell these men that he had his mind made up— "he had his mind made up to convict him before he was accepted on the panel as a juror." And Dobbs further says that, "I asked him did he say that to these men, and he said, 'Yes,' and I asked him, "Did you mean it?" and he said, 'Yes!' " And Dobbs further testified that Elliott told him he supposed he had his mind made up to convict before he went in the jury box.

Thus, we have on this proposition the testimony of Blackwood and Taylor, and the testimony of Dobbs, the deputy sheriff, that Elliott did tell them that he had his mind made up to convict Smith before he was selected on the jury. We have, further, the affidavit of the defendant and his counsel that they were ignorant of this fact and the certificate of the court that Elliott was fully examined on these matters and denied having any opinion, or prejudgment in the case.

And upon this point we will say with absolute confidence that there was no conflict in the evidence, practically that this was true, and we therefore did not have the fair and impartial trial by an impartial jury as guaranteed to us by the Constitution.

It has been held by an unbroken line of authority by this court that where a juror was shown to have formed an opinion and concealed the same on his *voir dire*, and this deceived the defendant, and the court in getting on the jury, that it is always ground for a new trial.

In *Cody's case*, 3 How. 27, it was held that a new trial must be granted where one of the jurors before trial said that "should he be of the jury he did not think he could clear the defendant but must be bound to find him guilty." That the jurors should be in the language of the law: "*Omni exceptione majores.*"

In *Sam's case*, 31 Miss. 480, this court says:

"If, after verdict, it appear that the juror who had stated on his *voir dire* that he had not formed or expressed

an opinion as to the guilt or innocence of the prisoner has prejudiced the case and had expressed an opinion unfavorable to the prisoner, and the prisoner was ignorant of the fact, a new trial should be granted."

In *Cannon's case*, 57 Miss. 147, this court, through Justice CAMPBELL said precisely the same thing. And in this case CAMPBELL, J., says: "It is well settled that this is good reason for a new trial." *Brown* v. *State*, 60 Miss. 447, is to the same effect.

In *Jeffreys* v. *State*, 74 Miss. 675, the court held that where the juror had expressed the opinion that the defendant was not justifiable in the killing of the deceased and where such juror on his *voir dire* had concealed the fact from the court, and the defendant and his counsel were ignorant of it, that a new trial must be granted.

To the same effect precisely are *Sheperd* v. *State*, 79 Miss. 740; *Mabry* v. *State*, 71 Miss. 716; *Klyce* v. *State*, 79 Miss. 652; *Fugate* v. *State*, 82 Miss. 189; *Martin* v. *State*, 54 So. 148.

In the case of *Dennis* v. *State*, 91 Miss. 221, this court on precisely the same state of facts and the same question raised in this case, says: "The right to a trial by an impartial jury when being prosecuted for crime is secured by section 26 of the Constitution. No more sacred duty can devolve on any court than the duty of seeing it to that this provision of the Constitution receives strict enforcement."

The very highest possible function of the court is to preserve the fairness and impartiality of jury trial. We therefore submit this case on this proposition with absolute confidence that it must be reversed.

The juror Elliott, by concealing his bias slipped on the jury with his mind made up to convict, as clearly appears and a verdict found by him must. be declared to be a nullity.

We respectfully submit that the court below erred in permitting the indictment to be amended at the end of

the trial by inserting the name Omar Smith for Homer Smith. This was an amendment, not of some informality of the indictment, but was a substantial change of the indictment, because Homer is not *idem sonans* with Omar, and it is beyond the power of the court to amend the indictment in this vital respect.

The Constitution absolutely requires that a trial shall be had on an indictment found by the grand jury, not found by the district attorney or the judge of the court, and we respectfully submit that if we were correct that this is an amendment of the substance of the indictment, then it is unnecessary to cite authority to sustain our position that it was fatally erroneous.

*George H. Ethridge*, for the state.

The attorneys for the defendant assign for error that the trial court impaneled the jury and took some evidence, however slight, and then discharged that jury on receiving a telegram to one of the jurors of the serious illness in the family of the juror, and that the court entered a mistrial instead of impaneling, or filling the panel with a man and retaining the eleven. The record shows that the defendant and the state both consented to the discharge of the juror Smith, but the defendant contended that the court should merely place another juror instead of Smith, and proceed with the eleven they already had and such new one as would be selected, while the state insited that there should be a trail *de novo*.

Whatever may be the merit of the contention of the appellant as to the justice of the proceedings, the law is against him. It is expressly provided in section 22 of the Constitution that an acquittal or conviction on the merits are essential to bar another prosecution, and whether the jury first impaneled was friendly or unfriendly to the defendant, under that section as construed by the court since the enactment of that section of the Constitution

you cannot complain of it. *Roberts* v. *State*, 72 Miss. 728, 18 So. 481; *State* v. *Kennedy*, 96 Miss. 624, 50 So. 978.

In this last case, the court said, page 104: "The common law rule is that in a trial for felony, if a juror, the judge or the prisoner become incapacitated by illness or death, after the jury is impaneled and sworn in chief, the proper course to pursue is to declare a mistrial and begin *de novo*." At all events the only complaint that could be made is not that the court erred in discharging the first jury, but that the second jury is not a fair and impartial jury, and that question is to be determined just as though there had been no proceeding whatever prior to the impaneling of the jury which actually tried the appellant.

It is next contended that the court erred in excusing the juror, McQuirter, because McQuirter was the husband of the second cousin of the uncle by marriage of the deceased.

I think no error could be predicated upon the fact, under this evidence, that the court in this case stood that juror aside. McQuirter was too near kin to the dead man to be placed on a jury to try appellant for murdering a man who was related to his relatives. I take it, however, that this is not seriously contended for, as men being tried for crime do not generally insist on the relatives and near relations of deceased trying them. It would be a serious complaint if McQuirter had been retained and had convicted, as he probably would have promptly done, had the court retained him on a challenge for cause by the defense.

It is next complained that defendant should have had a new trial because juror Elliott, who sat upon the jury and convicted the defendant, was not a competent juror. On the motion for a new trial it was set up that Elliott had formerly expressed an opinion as to the guilt or innocence of the appellant, and that he had heard the facts

in the case, or a sufficient amount of the facts, to form an opinion preceding his selection, and that he had concealed from the court on his *voir dire* examination.

The appellant introduced two witnesses who testified that after the trial they had a conversation with Elliott in which he made statements showing that he had his mind made up before going on the jury, and that he thought a man ought to be convicted and punished where he had killed another without reference to the circumstances of the killing. The court heard evidence both for the state and the appellant on this issue, and found in favor of the competency of the juror. Elliott denied absolutely making the statements attributed to him, and swore on the motion for a new trial that he had not heard the facts, and had not made the statements attributed to him. The finding of the court on this proposition of conflict of evidence, and there is a conflict of evidence in this record, is conclusive here, and this court will not undertake to review the finding of a trial court on a conflict of evidence, but the finding of the court will be treated as a verdict of the jury and will not be disturbed where the evidence supports the finding. *Schrader* v. *State*, 84 Miss. 593; *Lipscomb* v. *State*, 76 Miss. 223.

It is next complained that the court erred in permitting the state to amend the indictment during the trial by changing the given name charged in the indictment, "Homer Smith," so as to make it read, "Omar." I submit that these names, "Homer" and "Omar," come within the rule of *idem nomen*, and that the question was as to the identity of the person, and not the given name. Of course where it was understood that an entirely different person was indicted, you could not come in and change a name inserted in the indictment by the grand jury, but where it is a mere given name of similar sound to the real name by which people might naturally be mislead, it is perfectly proper to make the amendment. There is no question about the grand jury intending to

indict Smith, but as they caught the name to be "Homer" instead of "Omar," which was very natural as "Omar" is a rather unusual name, and "Homer" a rather common name, and certainly no prejudice resulted to the appellant by the amendment. See section 1508, Code 1906.

I submit that there was no error in the trial court in admitting any of the testimony offered which was objected to by the appellant; and I submit if there was any error, that the motion for a new trial in the court below, and the suggestion of errors in this court, and in the brief of the appellant do not point out any such error, and certainly the trial court's attention was not called to any error relied on, neither do the assignments of error here inform this court with any sufficient certainty what errors they are called on to redress. This is required under the authority of *Richburger* v. *State,* 90 Miss. 806.

It is next complained that the court erred in this case in refusing to have Pope, a witness for the state, recalled to lay a predicate for his contradiction by one Joe Albritton. It appears at the time this request was made that the witness had gone home, and was not within reach of the court. It appears the court made an effort to get Pope, and could not. It also appears that Pope testified, and presumably thought that he was done with, and certainly the trial court could not hold the case over to search for a witness who had disappeared, especially where the witness had been fully examined as to the facts of the case, and the testimony desired was mere impeachment testimony.

It is next complained that the court erred in giving the eleventh and eighth instructions asked by the state and given by the court.

The eighth instruction complained of is as follows: "The court charges the jury that they do not have to know that the defendant is guilty before they can convict him; it is only necessary that they should believe from all the evidence in the case beyond a reasonable doubt that he

is guilty and if they do believe from all the evidence in this case, beyond a reasonable doubt that the defendant is guilty, then it is the sworn duty of the jury to so find."

The instruction given the state had defined the elements that constitute murder and the elements that constitute manslaughter. The criticism of this instruction, in my judgment, is without merit.

It is also complained that the eleventh instruction given to the state was erroneous, and it is alleged that it was an attempt to define a reasonable doubt. I submit that it was not a definition of reasonable doubt, and did not undertake to tell them that they ought not to search for excuses, or for something which could be used as an apology for a verdict, nor should they act upon such doubts which are merely conjectural, and that such doubts ought to be reasonable and such as ought to make men pause and hesitate, and that they must arise out of the evidence, or from the want of evidence, in the case.

They are also informed that they are not required to know that defendant is guilty of the crime charged, and that they should hesitate to render a verdict because they did not know he was guilty, if they believed he was guilty, and believed it from the evidence beyond a reasonable doubt. If, however, it was construed as a definition of a reasonable doubt, as written, it would not be reversible, and no error could be predicated upon giving a correct instruction based on a definition of a reasonable doubt.

Argued orally by *L. M. Adams* and *R. N. Miller*, for appellant and *Geo. H. Ethridge*, assistant attorney-general, for the state.

SMITH, C. J., delivered the opinion of the court.

Appellant, having been convicted of the crime of murder and sentenced to life imprisonment in the state penitentiary, appeals to this court. On the evidence, which was in hopeless conflict, his guilt was a question of fact for the jury.

After a jury had been impaneled to try this cause, and while the examination of the first witness introduced by the state was being conducted, a telegram was received for one of the jurors, notifying him of serious illness in his family. It was agreed by counsel, representing both the state and defendant, that the juror should be excused, which was accordingly done. Defendant then requested the court to retain the remaining eleven jurors, and to complete the panel, offering to waive all right of challenge to these eleven men, and to use in the selection of the twelfth juror only his remaining peremptory challenges, which amounted to seven; he having exhausted five in the selection of the first jury. The court declined to grant this request of the defendant, entered a mistrial, and awarded a new special venire on request of the state, from which special venire the jury which actually tried the case was afterwards impaneled.

If the court committed any error in discharging this first jury and impaneling another, such error cannot be cured by now reversing the judgment and remanding the case for a new trial. Appellant's complaint is that he was not tried by the eleven men who remained on the jury when the twelfth man was excused; but, should we reverse the judgment, we could not, of course, direct the court to restore the *status quo* of the trial at the time the juror was excused. A reversal would simply mean a trial by a jury other than the one composed of the original eleven, and this defendant has had.

When one of the venire summoned for the second jury was being examined on his *voir dire*, it developed that he "was the husband of the second cousin of the uncle by marriage of the deceased," whereupon he was challenged by the state for cause, which challenge was by the court sustained, and appellant now claims that this challenge was erroneously sustained, and that he was greatly prejudiced thereby. A complete answer to this contention is that, under section 2685 of the Code, the exclusion of a juror from the panel cannot be assigned for error.

Appellant next contends that he was greatly prejudiced by reason of the fact that he was indicted under the name of Homer Smith, and that when the evidence came in, and it developed that his name was Omar, and not Homer, Smith, the district attorney was permitted by the court to amend the indictment so as to charge his real name— Omar Smith. Counsel have overlooked section 1508 of the Code, by which this amendment is authorized.

After one of the witnesses for the state, named Pope, had testified, appellant learned that he could impeach Pope by showing contradictory statements made by him to one Joe Albritton. He then asked that Pope be recalled, so that he might lay a predicate for the examination of Albritton; but in the meantime Pope had left the courthouse, and had gone to his home, which was about fifty miles away. Counsel complain that the court erred in not suspending the trial until Pope's evidence could be obtained, so that they might lay the necessary predicate for his contradiction. It is immaterial whether or not the court erred in declining to stay or continue the trial in order that the testimony of this witness might be obtained, for the reason that a judgment will not be reversed and a new trial granted, the only effect of which would be to enable an appellant to impeach the credibility of a witness.

Appellant contends, next, that the court erred in granting the eighth and eleventh instructions asked by the state, which the reporter will set out in full; the eighth for the reason that it "is misleading, because it omits the grade of the crime altogether," and the eleventh for the reason that it "is an attempt to do what this court has frequently condemned—define a reasonable doubt."

The court committed no error in granting the eighth charge. It was not intended, and could not have been understood as intended, to instruct the jury with reference to the grade of the offense. Full instructions along this line are contained in other charges of the court. The eleventh instruction does attempt to make more plain

one of the most exact and easily understood expressions
known to the law—one which any man with sufficient in-
telligence to be a juror could not misunderstand.   This
attempt to define the phrase "reasonable doubt" is by
the method of inclusion and exclusion; and while it prob-
ably was of no assistance to the jury in arriving at its ver-
dict, and could very properly have been refused, nothing
contained in it lessens either the quantity of evidence or
degree of proof required for conviction.   Such was not
the case with instructions condemned in *Brown* v. *State*,
72 Miss. 95, 16 South. 202, and *Burt* v. *State*, 72 Miss. 408,
16 South. 342, 48 Am. St. Rep. 563.

Even should we hold that the court erred with reference
to the last three matters herein discussed, such errors
would not warrant us in reversing the judgment; and we
do not understand counsel to so contend, for in their brief
they say:   "We do not, however, insist that these two
charges, standing alone, or that the improper admission
of testimony, or the depriving us of the benefit of Albrit-
ton's testimony to impeach Pope, are alone reversible
errors; and they are only pointed out to show, in connect-
ion with the evidence, and all the graver errors of  the
court heretofore enumerated, that the defendant did not
have that fair and impartial trial which it is the duty of
this court to see that he gets under the Constitution."

A juror named Elliott on his *voir dire* examination
stated "that he had neither formed nor expressed an
opinion in the case, and he had no impression, bias, or
leaning, or preference, as to how his verdict should go in
the case."   One of the grounds of the motion for a new
trial is that this juror had in fact formed and expressed
an opinion before he was summoned as a juror, and con-
sequently was not impartial.   In support of this allega-
tion, it was shown that Elliott was a member of the jury
at a former term of the court, when this case was called
for trial, but continued.   Two witnesses testified that
immediately after the trial they had a conversation with
Elliott, in which he told them that "he had heard the case

talked of a great deal, he had no idea they would take him, . . . that he was not asked the questions concerning that part of it;" but they stated that he did not tell them that he had formed or expressed an opinion as to the guilt or innocence of appellant.   Another witness, a deputy sheriff, who summoned Elliott to testify on the motion for a new trial, stated that Elliott told him that he had told these two witnesses "that he had his mind made up to convict him (meaning appellant) before he was accepted on the panel as a juror; I asked him did he say that, and he said he did; I asked him if he meant it, and he said, "Yes."

It will be observed that these statements are not alleged to have been made by the juror before he was impaneled as such, but are simply admissions made by him after verdict.   All of the statements were incompetent, and should not have been considered by the court.   A juror will not himself be permitted, even under oath in open court, to impeach his verdict; and for much greater reason he should not be permitted to impeach it indirectly by making statements relative thereto to third parties out of court and not under oath.

But, even if this evidence is competent, we could not reverse the judgment on this ground.   The juror himself testified at length in support of his verdict, and there is nothing in the evidence which indicates that his testimony should be rejected and the testimony of the impeaching witnesses accepted.   Where questions of fact are submitted to and decided by the trial judge, his findings will not be disturbed on appeal, unless they are clearly and manifestly wrong.   The rule in this respect is the same at law as in equity.  In *Cannon* v. *State*, 57 Miss. 147, *Lipscomb* v. *State*, 76 Miss. 223, 25 South. 158, and *Schrader* v. *State*, 84 Miss. 593, 36 South. 385, it was held that the finding by a trial court on a motion for a new trial that a juror was not hostile to the accused will not be reversed, where the testimony on the subject is conflicting.   This

rule was necessarily qualified by the *Dennis case*, 91 Miss. 221, 44 South. 825, but only to the extent that such finding will be reversed when clearly and manifestly wrong.
*Affirmed.*