HARRIS v. STATE.*

(Division B.   April 21, 1924.)

([99 So. 754.   No. 23605.]

1. HOMICIDE. *Conviction on sufficient evidence not set aside because
   conflicting.*
   In a homicide case, where the state's witness' testimony is direct
   and positive, and not inconsistent with itself nor in conflict with
   admitted physical facts and makes out a case of murder, the ver-
   dict of the jury finding the defendant guilty will not be set aside
   as insufficient, even though numerous witnesses for the defend-
   ant, and the defendant himself, testify to facts which, if true,
   make out a clear case of self-defense. Conflicts in the evidence
   are for the jury to decide.

2. CRIMINAL LAW. *New trial, for statements of prospective juror ac-
   cepted by accused without objection, not entertained.*
   In a criminal case, where the accused or his attorney obtains
   knowledge of statements by prospective juror as to opinions
   formed and expressed by such juror, and with such knowledge

makes no objection to such juror, and refuses an offer by the district attorney to excuse such juror by consent, and objects to a motion by the prosecution, after acceptance and before the introduction of evidence, to reopen the case and allow challenges for cause or peremptory challenges, and proceeds to verdict, a motion for new trial because of such statements or opinions will not be entertained.

3. CRIMINAL LAW. *Instruction on the law of reasonable doubt held confusing but not reversible error.*

It is not reversible error in a murder case for the court to give an instruction that in trying the case the jury should not hunt for doubts with the view of finding an excuse or an apology for their verdict, and that the jury are not required by law to know the defendant is guilty before he can be convicted, and "you should not hesitate to find that he is guilty before you are able to say outside of the evidence that he might have been innocent," but that, after carefully considering all of the evidence, if the jury should believe beyond every reasonable doubt that he is guilty, the jury should fearlessly discharge its duty and say "Guilty" by the verdict, but the instruction should not be given because more confusing than enlightening.

*Headnote 1. Criminal Law, 17 C. J., section 3594; 2. Criminal Law, 16 C. J., section 2649; 3. Criminal Law, 17 C. J., section 3689.

APPEAL from circuit court of Lowndes county.
HON. THOMAS B. CARROLL, Judge.
John R. Harris was convicted of murder, and he appeals. Affirmed.

*W. P. Stribling, B. A. Lincoln,* and *Jacobson & Brooks,* for appellant.

I. We contend that the appellant shot in self-defense, and that the court erred in not granting appellant a new trial. This verdict is not in accordance with the evidence, and appellant should not have been convicted. We are aware of the policy of this court that they will not disturb the verdict of a jury, unless they believe it was palpably wrong. The record here shows a grave miscarriage of justice.

The state closed its case with the testimony of an eleven-year-old boy, and his statement was that he was about twenty feet behind his father, and saw the appellant hold his father, and poke him in his ribs, and then shoot him. If this boy's statement is to be credited, then it stands to reason that there would have been powder burns on the deceased's clothes. The uncontradicted testimony is, that there were none. This boy did not even see the shooting. Mr. McMillan, a disinterested witness, standing at the window in his home in plain view of the shooting, and also in plain view of the road leading from the gate to the shooting, says he was not on the road, and was not anywhere near it.

II. *The disqualification of jurors Burns and Morton.* When Burns was accepted as a juror, the sheriff was selecting jurors from the bystanders, and the defendant only had one more challenge, and a list of the bystanders had been presented to counsel, which showed that each and every one of them were bitterly antagonistic to the defendant, and they took juror Burns as the lessor of two evils. When the state's representative dictated that statement into the record to the effect that Juror Burns had a positive opinion about the guilt of appellant, and had stated that he was guilty and ought to be hung, we were then in no doubt whatever. It was the plain duty of the court, of its own motion, to have ordered a mistrial of the case. To have excused Burns after his all-night association with the other eleven jurors would not have accomplished anything, as the poison was already administered.

In support of the contention that Harris, the appellant, was tried by unfair and partisan jury, and this case should be reversed and remanded for a new trial, see:— *Jefferies* v. *State,* 74 Miss. 675; *Bowen Klyce* v. *State,* 79 Miss. 658; *Thos. Garner* v. *State,* 76 Miss. 515; *Logan* v. *State,* 50 Miss. 269; *Ferriday* v. *Selser,* 4 H. 506; *Childress* v. *Ford,* 10 S. & M. 25.

*R. H. Knox,* Attorney-General and *W. W. Magruder,* for the state.

There is a sharp conflict as disclosed by the record in this case, as to who the aggressor was, the state's theory being that the deceased was walking down this farm road on his way home when the appellant called for the deceased to stop and that the appellant shortly thereafter, left his team standing in the field and went to where the deceased was. That the appellant was then armed with a deadly weapon, to-wit, a pistol, is not disputed, and that he then and there shot the deceased from which he instantly died, is not disputed.

The more unreasonable theory is that of the defense which is that the deceased went to the home of the appellant that morning to return some plow tools and that while there and while talking to the wife of the appellant, the deceased exhibited, seemingly intentionally, his pistol, as he struck the side of his coat with his hand and that thereafter, the deceased started back home down this farm road where he beckoned and called the appellant out to where he was, and here the appellant adopts the old hip-pocket defense by claiming that the deceased made a motion with his hand to his hip pocket, whereupon the appellant fired and had to fire in defense of himself, but these two theories were passed upon by the jury. They accepted the theory of the state and rejected the theory of the defendant, which we think is a correct conclusion reached by the jury from the record in this case. The jury had a right not to believe Holly McMillan and they had a right not to believe the appellant, because the evidence in many respects according to our judgment is unreasonable and unbelievable.

Much is said by counsel for appellant about the failure of the state to show that the clothing of the deceased was powder burned, maintaining that had the deceased been shot, as testified to by Elmage Harris, his clothes evidently would have been powder burned. We know as a matter

of common knowledge that sometimes clothing is powder burned, and sometimes it is not, and that sometimes powder burns farther than at other times, due perhaps to the kind of powder that is being used, or due to the fact perhaps, whether the cartridges were old cartridges or new cartridges; whether or not it was good powder or bad powder and whether or not it was all ignited or whether or not some of it failed to burn or ignite. Nevertheless, the appellant claims himself, that he was within two or three feet or very close to the deceased when he fired the fatal shot. It, therefore, being agreed practically, that they were very close together, it becomes immaterial whether the clothing of the deceased was powder burned or not.

Now as to what happened with reference to the jurors, John Burns and George Morton. True, astute counsel may make rather a plausible and aggressive argument both in his brief and before the court for reversal of this case upon the ground that these two jurors were incompetent and should not have been permitted to have remained on the jury. But the trouble about this proposition is this, after these two jurors had been examined on the *voir dire* examination and had been accepted by both sides and the court had adjourned for the day, attorneys for appellant had an opportunity to get rid of one of these objectionable jurors, or both of them, as they accepted the jury without exhausting all their challenges, having only exhausted eleven, then the next morning upon the convening of court they had another opportunity to get rid of this objectionable juror, J. H. Burns.

In *Parker* v. *State,* 55 Miss. 414, it was held that where jurors Wright and Jackson had expressed bitter feeling toward the defendant, indicating that they desired to see him hung, and where one of counsel admitted that he heard him so express his opinion before the trial began and accepted him with that knowledge, the court in affirming the case, said that the verdict could not be reversed, because it appeared by the bill of exceptions that Wright

disclosed on his *voir dire* examination that he had expressed an opinion but that he could give him justice.

This court will not permit such practice or flirtation and reverse a case here when they had several opportunities to cure any objection they might have had to these jurors.

Argued orally by *Hardin H. Brooks* and *W. P. Stribling,* for appellant, and *W. W. Magruder* and *R. H. Knox,* Attorney-General, for the state.

ETHRIDGE, J., delivered the opinion of the court.

The appellant was indicted, tried, and convicted for the murder of Robert M. Harris. The killing took place upon the premises of the appellant, of whom the deceased was a tenant, on the 15th day of March, 1923. The evidence as to the killing is in conflict; the evidence for the appellant showing, if true, that he acted in self-defense, while the evidence for the state makes out a case of murder.

Near the scene of the homicide were the appellant, the deceased, and a stepson of the deceased, a boy of about eleven years of age, and who testified for the state as an eyewitness to the killing. According to this boy's testimony the appellant had his pistol in his hand and was punching the deceased in the breast; the deceased trying to knock the pistol away, when the appellant fired the pistol instantly killing the deceased. This boy states that after the shooting the appellant ordered him away, and that he ran home and told his mother that the appellant had killed his stepfather. The wife of the deceased, on receiving this information, went to the scene of the difficulty to the body of her dead husband, and as she reached the place the appellant, in company with another man who lived upon his place, came up to where the body was lying. The widow testified for the state that the appellant ordered her away from the body and

cursed her, which statement appellant denied. Other parties arrived in a few minutes and search was made of the deceased to see what he had upon his person or in his clothing, and no weapon was found other than a small pocket knife.

The appellant and the witness who returned to the scene of the killing claimed to have found a pistol a few feet, some seven or eight feet, from the body of the deceased. The appellant contended that the deceased was attempting to draw the pistol from his hip pocket when he fired the fatal shot. Appellant's wife and the witness, Roy Rollins, testified that they witnessed from a distance, the shooting; appellant's wife being at appellant's home several hundred yards away, and Rollins being at his own home some distance away but in sight of the scene. They said that the deceased made a movement with his hand to his pocket just before the shooting occurred and that the deceased was not striking or knocking his hands up as testified to by the boy. The appellant's wife states that she told the appellant that the deceased came to the home a short while before the homicide on the morning thereof and that he was armed with a pistol in his overalls hip pocket, and that he threatened the appellant, that her husband came to the house just before the killing and she made this statement to him, and that when he returned to the field where he was at work she saw the deceased and her husband a few feet from where her husband was plowing, and that they were several feet apart at the time of the shooting. The witness Rollins claimed to have taken the pistol found near the place of the homicide and turned it over to one of the attorneys for the appellant, and identified a pistol produced at the trial as being the pistol so found. The stepson and widow of the deceased both testified that he owned no pistol at the time. The defendant introduced a gunsmith living at Columbus, Miss., who testified that the pistol produced by Rollins was a pistol re-

135 Miss.—12.

paired by him for the deceased some six months prior to the killing.

In impaneling the jury, a juror by the name of Burns, who sat upon the case through the trial, was examined touching his qualifications as a juror and stated that he could enter the jury box and try the case fairly and impartially, and that he had not expressed himself with reference to the case. After the juror Burns had been placed in the jury box by the court and had been accepted by the state, one of the attorneys for the appellant was told by a man that Burns had made statements in which he expressed the belief and opinion that the appellant was guilty and ought to be convicted. On receiving this information the attorney returned to the room where the other associate attorneys and the defendant were in conference with reference to the acceptance of the jury and disclosed to his associates the communication which had been made to him with reference to the juror Burns. The attorneys returned into the court after conference and with the permission of the trial court further interrogated Burns as to the state of his mind and as to his opinions, but did not specifically ask him with reference to the statements made by the said party to the said attorney of the defendant. After such examination the appellant accepted the juror Burns. The following morning, and before any evidence was introduced, the attorneys for the prosecution moved the court to permit them to reopen the case for further examination and for further challenges, both for cause and peremptorily, stating to the court that they had information that Burns had made an expression of opinion unfavorable to the defendant, which motion the defendant objected to, and the court overruled. Prior to making this motion the district attorney stated in open court that he had information that Burns had made some statement which might disqualify him as a juror and offered to excuse Burns by consent. The attorneys for the defendant, after con-

sultation, announced that they had nothing to say with reference to this proposition. The judge stated in ruling on the motion that if he sustained it he was fearful that it might be necessary to discharge all of the jury and start anew, and, inasmuch as the defendant objected, and inasmuch as the information was that Burns' expressions were hostile to the defendant, that only the defendant could complain, and that he did not believe that he could avail of such information on appeal after refusing the district attorney's proposition and objecting to the motion made by the attorneys for the state.

After the trial was completed and the verdict returned, the defendant himself testified that while he was in the jail, which was a few feet from the courthouse, he saw the juror Burns in one of the upstairs rooms of the courthouse talking to some one on the ground below, and that Burns expressed the opinion that the appellant was guilty. But notwithstanding he heard this statement he failed to communicate it to his attorneys, and the trial proceeded through Monday and Tuesday following the alleged hearing of this statement made by Burns.

It was also made a ground of the motion for a new trial that one of the jurors by the name of Morton formed and expressed an opinion prior to the trial, and on his *voir dire* examination had concealed such expressions from the defendant and his attorneys. A witness was introduced on the motion for a new trial by the name of Myers, who said that some time after the killing he was at the store of Spann & Ussery at Caledonia, Miss., and they were discussing the Harris killing, and that Mr. Morton said, "I don't see how I could give John Harris justice, knowing what I do about him and what I know about the case;" that he did not communicate this knowledge to the defendant or his attorneys before the trial. The juror Morton was introduced and denied making such a statement to Myers or in his presence or to any one. The witness Myers said that after the trial he spoke to

Morton and asked him "if I didn't understand him to
say that he didn't see how a capable and competent juror
could do anything but convict this man, and also if he
didn't say he didn't see how he could be a competent
juror, and he said he didn't want to be on the jury, and
the judge accepted him any way," that the witness said,
"Didn't you say that you couldn't give John Harris
justice?" and that Morton said, "No." The witness
said: "He sure told me, 'If what I heard about this
case is true, I would believe in hanging John Harris.'"

The appellant also assigns for error the giving of in-
struction No. 5 for the state. This instruction reads as
follows:

"The court charges the jury for the state that in trying
this case you should not hunt for doubts with the view
of finding any excuse or apology for your verdict, nor
should you indulge in such doubts as are merely conjec-
tural or chimerical; but the doubts which ought to make
you pause and hesitate must be reasonable doubts, and
they must arise out of the evidence or for the want of
evidence in this case. You are not required by the laws
of this state to know the defendant is guilty of the crime
charged against him before you can convict him, and you
should not hesitate to find that he is guilty before you
are able to say outside of the evidence that he might
have been innocent; but after carefully considering all
of the evidence in the case, if you believe beyond every
reasonable doubt that he is guilty, you should discharge
your duty fearlessly under your oaths and under the law,
and say so by your verdict."

We are of the opinion that the evidence warranted the
conviction of the appellant if the testimony for the
state be accepted as true. It is urged that it is insuffi-
cient, it being against the great weight of the evidence, to
remove all reasonable doubt of guilt, especially in view
of the numerous witnesses produced by the defendant.
Questions of conflict in the evidence are for the jury,

and, where the evidence for the state is direct and positive and not inconsistent within itself and not inconsistent with admitted physical facts, the verdict of a jury will not be disturbed, even though numerous witnesses may testify to contrary facts. We do not feel warranted in granting a new trial on the ground of the insufficiency of the evidence.

With reference to the assignment of error in regard to the juror Burns, we think that, inasmuch as the attorneys for the appellant had knowledge of his expressions before accepting him on the jury, and in view of their declining the offer of the district attorney to excuse Burns by consent, and in view of their objections to a motion made by the state to reopen the case and allow further challenges, this assignment of error cannot be maintained. The appellant failed to ask Burns specifically about the statement and failed to produce before the trial judge the witness who communicated the information to them or to make any manner of objection to Burns with this knowledge, which precludes its being raised successfully here. A party, even though tried for a high crime, cannot assign for error misconduct of this kind which he knew before accepting the juror. He cannot avail himself of the information after the trial, if he refuse to take appropriate steps after securing the information before the trial to prevent the injury. It is not permissible for a person to conceal knowledge which comes to him when he had a seasonable opportunity to avail of the knowledge before trial and take the benefit of a possible acquittal, and then afterwards set up the facts of which he had previous knowledge. With this information communicated, the defendant and his attorneys must be held to have elected to take Burns notwithstanding his hostile expressions. Having made that election, and having refused to avail of an opportunity after so obtaining it to get rid of a juror such as was given them by the district attorney's offer, they cannot now assign

it as a valid reason for annulling the trial. As to the statement of Harris, the appellant, as to what Burns stated in his hearing while Burns was in an upstairs room of the courthouse and Harris was in jail near by, there are two reasons why this cannot be availed of for the purpose of annulling the trial. The first of them is that Harris wholly failed to communicate it to his attorneys or to take any advantage of it in any legal way before the verdict; second, Burns denies making any statement, and it was the function of the trial judge to pass upon the credibility of the witnesses on a motion for a new trial where their statements are conflicting. The same duty of passing on conflicting testimony makes the action of the trial judge as to Morton binding on the court here. There was a direct conflict as to whether Morton made the statement or not. The trial judge had the parties before him, and was in a better situation to pass upon the sincerity and credibility of the witness.

In reference to instruction No. 5 for the state, above set out, counsel for the appellant state in their brief, "We are not unmindful that this identical instruction was approved in the case of *Smith* v. *State,* 103 Miss. 356, 60 So. 330," but they respectfully submit that this case approving this instruction should be overruled, contending that by this instruction it is proposed to define a reasonable doubt, and to comment to a certain extent, if not upon the weight of the evidence, upon the weight and importance of the lawsuit, and as such violates the law with reference to the kind and quality of the instruction that should be given. Counsel also cite *Jones* v. *State,* 130 Miss. 703, 94 So. 851, as practically overruling the *Smith Case, supra,* wherein Judge COOK, speaking for this court, said:

"This instruction is specially criticized on account of the use of the word 'because' instead of 'before' in the sentence reading, 'You should not hesitate to find him guilty because you are able to say, outside of the evidence,

that he might have been innocent;' the contention of counsel for appellant being that this sentence precludes the jury from considering any doubts which may arise from a lack of evidence. It is difficult to understand the exact meaning of the instruction as given, and it should properly have been refused; but in view of the many skillfully drawn and exceedingly liberal instructions granted the defendant, covering repeatedly every element of proof required for conviction, we do not think this instruction could possibly have misled the jury as to the quantity of evidence or degree of proof required for conviction, and we have reached the conclusion that it does not constitute reversible error.''

In the present case there are also elaborate instructions presenting every phase of the law bearing on the issues before the jury. Instruction No. 5 is more confusing than enlightening, and for this reason ought to be avoided, but the court has held in every case involving this instruction that it would not reverse for it. While it is true that a jury should not hunt for doubts with the view of finding an excuse or apology for a verdict, yet they should consider doubts and determine whether they are reasonable in the light of all the facts. A jury of course is not expected to apologize for its verdict, and is not supposed to do so, and hence an instruction of the nature here involved ought not to be asked for or received. The clause in the instruction, ''and you should not hesitate to find that he is guilty before you are able to say outside of the evidence, that he might have been innocent,'' is the confusing part of it. Instead of the word ''before'' in this clause the word ''because'' was originally used, but, even if ''because'' be substituted for ''before,'' it really would be confusing to a certain extent · Certainly it would not be enlightening. Perhaps a jury ought to hesitate and pause if they were unable to say outside of the evidence that the defendant might be innocent. The evidence must be sufficient to show that he is not innocent. · A reasonable

doubt may arise for the lack of sufficient evidence, but, where all of the facts are in evidence and the entire transaction is witnessed by eyewitnesses, this feature of the instruction which might be pertinent in circumstantial evidence becomes useless.

Where the law is clearly given, and all rights of parties are carefully safeguarded we will not reverse for a mere technical error or a verbal inaccuracy. However we think it would be wise for those charged with the enforcement of the law to steer clear of confusing instructions and present the law as clearly as possible. The state desires no advantage in the trial of a case, and the instructions ought to be so drafted as to assist the jury in reaching its conclusions by clear and explicit language. We decline to reverse the cause for the giving of this instruction.

*Affirmed.*