## WOULARD v. STATE.*

(Division B. Feb. 9, 1925. Suggestion of Error Overruled Feb. 23, 1925.)

[102 So. 781. No. 24649.]

1. CRIMINAL LAW. *Failure to charge in state's instructions as to reasonable doubt held not error, in view of instructions to that effect for defendant.*

In none of the instructions for the state in a murder case were the jury charged that the evidence should show the guilt of the defendant beyond a reasonable doubt, but they were so charged in instructions for the defendant. *Held* not error, as instructions for both the state and the defendant should be construed together as one instruction, and so construing them the jury were properly charged.

2. CRIMINAL LAW. *Refusal to continue case because of absence of witness who would testify as to dying declaration held not error.*

In a murder case, where the turning point was whether the defendant or the deceased was the aggressor, it was not error to overrule defendant's motion to continue the case on account of the absence of a witness by whom defendant expected to prove a dying declaration of the deceased to the effect that deceased stated to the witness that if his gun had been loaded he would have shot the defendant, the application for a continuance being silent as to whether the absent witness would testify whether the deceased stated that he would have shot the defendant in self-defense or as aggressor in the difficulty.

3. HOMICIDE. *Indictment and proof held not to present variance as to person killed.*

The indictment charged the defendant with the murder of Isadore Grug. In their evidence the witness referred to the deceased both as Isadore Grug and Cidero Cruize, showing that he was known as well by one name as the other. *Held*, under section 1508, Code of 1906 (Hemingway's Code, section 1266), there was no variance between the indictment and the proof.

---

*Headnotes 1. Criminal Law, 16 C. J., section 2493; 2. Criminal Law, 16 C. J., section 921; 3. Homicide, 30 C. J., section 335.

APPEAL from circuit court of Perry county.

.HON. R. S. HALL, Judge.

Arnold Woulard was convicted of murder and he appeals. Affirmed. ·

*A. T. L. Watkins,* for appellant.

The court could not take advantage of the failure to have process issued for the witness, on account of its promise, its officers having promised that the absent witness, G. T. Dennis, ex-sheriff, would be in court on the day of the trial. In fact the witness had already been in court as a witness in this cause. The fatal error is that the court stated that the testimony was wholly immaterial, that it was secondary evidence. It was part of the *res gestae,* an admission of a party to the combat, and according to the state's theory, a dying declaration. The sheriff talked with deceased after he went to the hospital; the doctor, before; and evidently nearer the dying hour than the statements made to the doctor, the only witness called for by defendant. The reasons are set forth with motion for a continuance.

A man has a constitutional right to know who he is charged with killing. An examination of the testimony discloses that the evidence is for killing "Cidero Cruize" not "Isadore Crug" and we respectfully submit that an acquittal or conviction on one, will not bar a prosecution on the other. Whom has he killed and has he killed the person as charged in the indictment? Was the accidental shooting of Woulard's wife and baby by Cidero Cruize or Isadore Crug? Who made the dying declaration, Cidero Cruize or Isadore Crug? Was it ever proved that Isadore Crug, named in the indictment is dead? Is this court authorized to assume which it is or who is dead? Section 26 of our Constitution should not be made a joke. It was brought to the attention of the court in ample time to have investigated and ascertained the facts, but the court utterly ignored the matter and

the defendant's rights in the premises. See *McBeth* v. *State*, 50 Miss. 81. If some one had shot his wife and baby, he had a right under section 12 of the Constitution to get a gun if he did not have one, or independently of the Constitution he had a right to protect his home and family, and it was not evidence of murder to get the gun or have the gun. There is not a word of testimony that indicates that deceased ever attempted to say it was an "accident" prior to the shooting and the physical facts show it was a deliberate shot. Not a shot hit anything except the woman and baby.

The state announced that it was its intention to establish a dying declaration, but no effort was ever made to do so. The rule for determining the admissibility of dying declarations is fully set forth in *Bell* v. *State*, 72 Miss. 507, and is reannounced and adopted in *Sparks* v. *State*, 74 So. 123. In this case there is not a pretense at qualifying the statements as such but just left them as a "guess" for the jury. In the *Bell case, supra,* it is settled that the admissibility of the evidence is for the court in the absence of the jury, it being the duty of the court to investigate the circumstances under which the declarations were made, citing *Owens* v. *State*, 59 Miss. 547, to the same effect, that is, to fully investigate by the rules of law as to the competency of such evidence, which is a preliminary inquiry to be made by the court, before the jury is permitted to hear it—a few of the authorities are, *Williams Case,* 81 So. 737; must be in the absence of all hope, 85 So. 166, 86 So. 619 and citations; must be a predicate, 89 So. 835, citing 77 So. 75; 52 So. 337; 48 So. 373; 67 So. 237; must be made *in extremis,* full knowledge of his danger, 99 So. 68; limited to acts which caused death, 6 So. 840; "under a fixed belief that death is impending" and certain to follow in a very short while, 98 So. 693; determined in the absence of the jury, 98 So. 693; must be admissible beyond a reasonable doubt, not based on conclusions, 96 So. 459; 89 So. 835; not of *res gestae* incompetent, 95 So. 569;

94 So. 851; court first made a preliminary examination, 93 So. 529 and citations; hearsay unless made under belief of impending death, 93 So. 57, par. 9; 93 So. 79; 92 So. 33, 627, 828; must be a preliminary examination, 91 So. 417; 89 So. 835; 77 So. 75; 52 So. 337; 48 So. 373; 67 So. 237; in the absence of all hope, 85 So. 166. A final statement before being hanged not a dying declaration, 79 So. 375; must die immediately, 79 So. 201, 322; no hope, 79 So. 699, 322; must be confined to *res gestae,* 79 So. 699, and others.

It is the settled law that a predicate must be laid, and the admissibility of the statement, whether or not it is a dying declaration, such as is competent evidence is strictly for the court, as a preliminary question in the absence of the jury, but the court will note that in this instance no preliminary examination was made either in or out of the presence of the jury, but the district attorney just took a shot at it, and let the jury make a guess. An examination will disclose that it does not come up to the requirements of law as a dying declaration, or any part of a dying declaration.

The court should have sustained the motion for a peremptory instruction. Danger need not be actual but reasonably apparent.

Every instruction granted to the state, except the fifth, directing the forms of verdict and the penalty following, is erroneous. The first, makes no mention of "proof beyond every reasonable doubt" and attempts to authorize the jury to convict, although whatever provocation defendant had, was only for a moment prior to the firing of the gun. The instruction is correct in a proper case, but not applicable to the facts in this case. The defendant either formed the intent to shoot when he went off after the gun or when the deceased followed him in his yard (and he says, making some movement, as if to shoot). If the latter, there was not a "moment" shown in which to reflect, because a man could not shoot without first forming an intention. Yet

the evidence does not show any time for reflection; if following defendant into his yard was the provocation, it was continuing at the moment the gun fired, by all the testimony, and this is a clear case of giving an instruction not based on the evidence, which is always erroneous, under all circumstances.

Instruction two ignores every principle of law. It does not so much as inform the jury that it is for the state, the "reflection" is not described as an intent to kill, without sufficient provocation or unlawful killing or apparent danger, and· is in direct conflict with every instruction granted to defendant and the jury could not know which to follow, even if they had deliberated. See recent case of *Reddix* v. *State,* 98 So. 850, 100 So. 577. Neither one nor two is based on any belief by the jury, but are peremptory, 94 So. 210. Both were erroneous in that there was no evidence of reflection or time for reflection, at the time of the shooting and both instructions make no reference to a reasonable doubt, but apparently at least, leave the burden on defendant to exonerate himself.

·The substance of the latter clause of instruction three tells the jury, "that it is not enough that defendant believed himself in danger," unless the jury, viewing it as they do now, think him in danger. The state does not have to prove anything beyond all reasonable doubt, not even by a preponderance of the evidence. The jury is not required to believe anything, only that "he had grounds for such belief (not reasonable grounds, or apparent grounds). As recently stated by the supreme court of Mississippi, "a man may believe a thing and not believe it beyond a reasonable doubt," or from the evidence "or lack of evidence." *Hall* v. *State,* 91 So. 397. All instructions may say "believe beyond every reasonable doubt" in every criminal case.

Instruction four says, "if they believe from the evidence" not beyond a reasonable doubt, not from lack of evidence, to the "reasonable satisfaction of the jury

that deceased was about to kill him, etc., or immediate danger (not apparent danger) and not to gratify a grudge;'' if it means anything, it is for the. jury to assume that the shot was to gratify a grudge.

Instruction six might have been correct if defendant had shot at Peter and killed Paul. Not one of the contingencies mentioned apply in this case. Defendant had not claimed an accidental shot, nor does the testimony show reckless handling of a dangerous weapon, nor that defendant was engaged in an act *mala in se,* or even *mala prohibita,* but if he shot illegally, it was without apparent danger or necessity and assumes that deceased did not intend to commit a felony and that defendant knew it.

Instructions one and, two, refused to defendant, denies to accused his right to shoot to prevent a felony being committed on himself or a member of his family. The court will bear in mind that the state's entire case is builded on an ''accidental shot'' as an excuse for the shooting of defendant's family. We do not believe any sensible man would have stopped, under the circumstances, to ask whether the gun was loaded or not, but that he had a right to assume it was. It was, at least, apparently a deadly weapon, and deceased was following defendant in his own yard with the gun, loaded or unloaded, which is shown by the state's evidence.

Instruction four, refused to defendant, was drawn under section 1230, Code of 1906, Sub. ''f'' and ''g'' and should have been given. See *Spivey case,* 58 Miss. 858, unduly abridging the right of self-defense.

Instruction five, refused to defendant, is in the face of *Lamar* v. *State,* 63 Miss. 265, and so with instruction six. Each instruction presents the law fairly, in so far as this record discloses facts and circumstances, and meets the burden attempted to be placed on defendant by the state, in shooting in retaliation of an ''accidental shot,'' as claimed by the state all through the trial.

Instruction two, refused to the state, states the law and should have been given. Its refusal was in conflict with instructions granted to defendant and if the jury had deliberated, it would have confused them.

From the earliest decisions of the supreme court of Mississippi to date, any remark by the judge that would likely prevent the jury from fully and fairly deliberating, especially in a murder case, has been disapproved and condemned, without exception. The motion for a new trial, with all reasons therefor, is sworn to and not denied, therefore, must be taken as true (pages 57 and 58, order overruling motion, page 56) and in fact are true, else the judge would have challenged the statements, charging him with certain irregularities and conduct; and in not taking proof on the motion the state is admitting the truth of the allegations of the motion. This court will not stop to inquire whether or not harm was actually done, but whether it may have influenced the jury, 53 So. 415, it is not permissible to take testimony to rebut the presumption of injury, citing *Lamar* v. *State,* 64 Miss. 687, giving the reasons. Citations might be multiplied.

We respectfully submit that the cause should be reversed and defendant given a fair trial on an explicit indictment that informs him of what he is charged with, who he is charged with killing and whether the person he is charged with killing is really dead, that is "Isadore Crug," excluding all testimony of the killing of some other person and excluding the "accidental shooting" or permit him to show what the appearances were at the time of the shooting.

*E. C. Sharp,* Assistant Attorney-General, for the state.

The indictment charged the killing of Isadore Crug and several of the witnesses referred to the party killed as Cidero Cruize. However, the district attorney's questions were always directed as to the killing of Isadore Crug. The only reference to the alleged variance throughout the trial was in the form of a motion

made by appellant before the introduction of any testimony, the motion being as follows: "The defendant, also, objects to the indictment now presented to the court as being a certified copy of an indictment purporting to come from the secret records of indictments and charges that he unlawfully and feloniously killed one Isadore Crug, a human being, and at a former term of this court the defendant was put to trial for the murder of one Cidero Cruize, a different person and a different charge." No evidence was introduced in support of this action. Therefore, it was promptly and properly overruled by the court.

There is nothing in the record to indicate that Crug and Cruize were not one and the same. If not the same, timely objection should have been interposed and under section 1508, Code of 1906, the indictment could and would have been amended to conform to the proof. *Smith* v. *State*, 103 Miss. 356. "When a person is known as well by one name as another, indictments can allege either name." 14 R. C. L. 182.

Appellant argues at great length about the admission of a dying declaration, but we are unable to see wherein it was incompetent, or if incompetent, how it could have been prejudicial to the appellant. Several instructions for both the state and the defendant were refused. A mere reading of these instructions is all that is necessary.

In the motion to set aside the verdict of this jury, it is alleged that as the jury was about to retire, the judge remarked that he would wait thirty or forty minutes and if no report was made, that he would go home and return the next morning. That the jury retired and returned a verdict within fifteen minutes.

No special bill of exceptions was taken and no proof in support of the motion was submitted. There being no proof of this fact, no special bill of exceptions taken, and no showing that the appellant was prejudiced, this

court will not disturb the finding of the court on the motion.

In the motion for a continuance, because of the absence of a witness for the defendant, it is shown that no process was asked or taken for the witness, and that the testimony, had the witness been present, would have been incompetent. We think it unnecessary to cite any authority to show that a defendant is not entitled to a continuance when process has not been requested and no diligence shown on his part to secure the presence of his witness.

The testimony was conflicting and the case properly submitted to the jury.

Argued orally by *A. T. L. Watkins*, for appellant, and *E. C. Sharp*, for the state.

Anderson, J., delivered the opinion of the court.

Appellant, Arnold Woulard, was indicted and convicted in the circuit court of Perry county of the crime of murder, and sentenced to the penitentiary for life, from which judgment he appeals.

In none of the instructions given for the state were the jury informed that the evidence should show the guilt of appellant beyond a reasonable doubt. That is assigned as reversible error. They were instructed that if they believed from the evidence appellant was guilty they should so find. There was nothing in any of the charges for the state as to the weight of evidence necessary to justify a verdict of guilty. In several instructions for the appellant, however, the jury were charged that they could not find appellant guilty unless his guilt was shown by the evidence to a moral certainty and beyond all reasonable doubt. The instructions for the state and for appellant should be read together as one instruction and interpreted as a whole. So read and considered the instructions for the state and appellant

are entirely consistent with each other. The court said to the jury, in the instructions for the state, that if they believed from the evidence that defendant was guilty they should so find. And then, in the instructions for appellant, they were told that under the law their belief of guilt from the evidence had to be so strong as to exclude every reasonable doubt. There was no harm done appellant. The jury were not misled. It was easy for the instructions given for the state and the appellant to be reconciled by the ordinary mind.

There was no error in the action of the court in refusing appellant's application, to either continue the case or delay its trial to another day on account of the absence of the witness Dennis, by whom he expected to prove that deceased stated to the witness that the reason he did not shoot appellant at the time of the difficulty was that his gun was not loaded. In the application for a continuance or delay of the trial, in order to procure the presence of this witness, it was not set out when the deceased said he would have shot if his gun had been loaded, whether before appellant' shot him or afterwards. As a justification of the homicide appellant relied on self-defense. He testified that he shot the deceased in order to prevent the latter from taking his life or doing him great bodily harm; that at the time he shot deceased the latter had his gun trying to shoot him. It was most pertinent therefore as to whether the deceased meant in his statement to the witness that he would have shot appellant as aggressor or in self-defense. We hold that what appellant desired to prove by the absent witness was immaterial. It was an admission by the deceased, entirely consistent with the evidence for the state, which showed that appellant was the aggressor in the difficulty, and not the deceased.

A short while, perhaps from ten to fifteen minutes, before the homicide the deceased had fired a shot with his shotgun near appellant's home. Some of the shot from this load struck appellant's wife and child, making

137 Miss.—52.

very slight wounds. The state introduced over appellant's objection the alleged dying declaration of deceased, to the effect that such shooting by him was accidental and that he had afterwards gone to appellant's home to offer his services when appellant shot and killed deceased. Dr. Pugh, who attended the deceased after he was shot testified to that declaration of the deceased, and further, that the deceased was mortally wounded, and before making such statement in his presence realized that he was mortally wounded and as evidence of that fact said: "I am dying, doctor, please let me go to the hospital." We are of opinion that the alleged dying declarations met the requirements of the law. Dr. Pugh's evidence we think showed that the declaration of deceased was made under the sanctity of impending death.

Appellant was charged in the indictment with the murder of Isadore Grug. Some of the witnesses referred to deceased by that name, while others referred to him as Cidero Cruize. Before going into the trial appellant objected to "the indictment now presented to the court as being a certified copy of an indictment purporting to come from the secret records of indictments, and charges that he unlawfully and feloniously killed one Isadore Grug, a human being, and at a former term of this court defendant was put to trial for the murder of one Cidero Cruize, a different person and a different charge." This objection was overruled and the action of the court in so doing is assigned as error. The record shows that the deceased was known as well by one of those names as the other. That being true the indictment could have alleged either name. 14 R. C. L., p. 182, section 28. And furthermore, if, during the progress of the trial, it develops from the evidence that the deceased is given the wrong name in the indictment, under section 1508, Code of 1906 (section 1266, Hemingway's Code), this is a mere amendment defect. *Smith* v. *State,* 103 Miss. 356, 60 So. 330. And a failure to

amend the indictment under such circumstances is not reversible error unless harm results therefrom. In the case at bar no harm whatever is shown to have been done appellant by the fact that the deceased was known by two different names.

The appellant argues that his request for a directed verdict should have been granted. We are unable to see upon what that contention is based, for the evidence on behalf of the state is very strong and convincing that at the time appellant shot and mortally wounded the deceased the latter was making no demonstration whatever to harm appellant.

We find no merit in the other assignments of errors. They are not of sufficient seriousness to call for a discussion by the court.

*Affirmed.*