## BURNS *v.* STATE.

(Division A.   April 18, 1932.)

[141 So. 278.   No. 30028.]

**Dan Brewer,** of Clarksdale, for appellant.

W. D. Conn, Jr., Assistant Attorney-General, for the state.

McGowen, J., delivered the opinion of the court.

Joe Burns, the appellant, was convicted of murder in the killing of Betty May Griffin. The jury having dis-

agreed as to the punishment, the court sentenced the appellant to be confined for life in the state penitentiary.

From the state's standpoint, the gist of the evidence of eyewitnesses was to the effect that the appellant was guilty of an unprovoked murder. The evidence shows that he had been estranged from his wife; that the deceased, Betty May Griffin, had undertaken, at his instance, some days before the tragedy, a reconciliation between the husband and wife. On the Sunday afternoon the homicide occurred, the appellant's wife was sitting in the deceased's car in front of the latter's home talking with her husband. The deceased and her husband went into the house and the appellant was in the home of deceased when they got there; that the deceased came out of her house and got in her car on the front seat at the steering wheel with the appellant's wife on the front seat with her; that as the appellant came out he saw them driving off and whistled at them, being then on a street in Clarksdale. The car stopped and he got on the back seat, and when they had gone about twenty yards the appellant's wife jumped from the moving car and fell, but immediately arose and went away. By the time the car stopped, or while in motion, the appellant caught the deceased around the body and pulled her from under the steering wheel over the front seat, and, with her body in his embrace, her heels upon the front seat, with a pocket knife he stabbed her on either side of the neck from which she died in a few minutes. The eye-witnesses said she was, at the time, doing nothing to the appellant. One witness sought to hold him while he was in the act of stabbing the deceased. The state's witnesses said the appellant's clothes were bloody in front thereof.

He fled from the scene, and was arrested in Tutwiler, Miss., at an early hour on the following morning and denied his identity.

The appellant's testimony was to the effect that at the time he acted in self-defense; that the deceased made an attack upon him with a butcher knife before his wife

jumped from the car, because he did not want his wife to ride with her and sought to take his wife from the car; that the deceased was up on her knees with a butcher knife cutting at him and that he stabbed her in self-defense. He admitted changing his clothes and secreting them in the woods, and his subsequent arrest at Tutwiler.

The court admitted some communicated threats made by the deceased against the appellant to the effect that she would do him bodily harm.

The appellant urges here as error the refusal of the court to permit him to prove, by several witnesses, that the appellant had information from these witnesses that Betty May Griffin was a degenerate, not a proper person to associate with his wife, and that this degenerate woman would likely debauch his wife. We here quote from the record the statement of the appellant's counsel in the court below as to this excluded evidence: "And so the defendant told that the deceased, Betty May Rayford, was a degenerate, commonly called a 'bull-dagger,' and that it would be well for him to keep his wife out of her company. I further offer to prove by Jessie Bunns that on the same day Saturday immediately preceding the day of the killing, he had a conversation with the deceased in which he accused the deceased of being a bull-dagger, degenerate, told her that she should not go with the wife of the deceased, and that she then told him that, the witness, that he would go with her, and that he would not be interfered with by the defendant, and if he did interfere that she would do him great bodily harm, that by other witnesses that the general reputation of the deceased was that of the degenerate woman, practiced immoral habits with women, and further then by the defendant that these threats were communicated to him prior to the time of the homicide," etc.

The appellant's contention is that, if this evidence had been admitted by the court, the appellant would have been entitled to an instruction submitted to the jury for its decision as to whether or not, under these circum-

stances, the appellant was guilty of manslaughter. The appellant cites a line of cases holding that, where a husband finds his wife engaged in an act of adultery with a man, and thereupon kills either, the crime is not murder, but manslaughter.

In this record, counsel did not explain to the court what type of woman is meant by the word "bull-dagger," but we assume from his statement that in that locality it means a woman guilty of immoral and degenerate practices with other women.

There is no pretense in the evidence of the appellant, at the time of the homicide, that there was any sort of immorality being indulged in by the deceased, and the wife of the defendant in the car, nor is there any evidence tending to show any effort or demonstration toward any immoral practice in the car on the public street in Clarksdale.

The only case cited by counsel as being in support of this theory, that the appellant killed the deceased in order to protect his wife from the degenerate practices of the deceased, is the case of Jones v. State, 51 Ohio St. 331, 38 N. E. 79, where a father was charged with the murder of his son about fifteen years of age. The defense in that case was that the killing was accidental. The father contended that his son had left home, and was under the baneful influence of Mrs. Mallott and her daughter, with both of whom he was having illicit relations, the father, at one time, having come upon his son and Miss Mallott engaged in illicit intercourse, and that his son was being dominated by this influence. He undertook to take his son from a wagon in which the Mallott family were riding when the homicide occurred. The court there held that these circumstances were admissible in evidence, but reversed the case on an instruction. This case does not appear to have been cited by any other court, and, later, in State v. Sappienza, 84 Ohio St. 63, 95 N. E. 381, 383, 34 L. R. A. (N. S.) 1118, Ann. Cas. 1912B, 1109, was not construed as authority for the contention here made by the appellant, but held

that the material element in the Jones Case was upon grounds involved in that case alone, saying: ''Where the state has shown that the death was the result of design, the motion of accident is necessarily excluded. . . . Therefore, when the plaintiff in error introduced evidence tending to prove that the gun was accidentally discharged, he was merely controverting the truth of the averment in the indictment that it was purposely discharged.''

So that, whatever may have been the view in the Jones Case, it is not authority here. All the facts are different.

Counsel for appellant cites the case of Staten v. State, 30 Miss. 619, wherein the court held that the right of self-defense extended, not only to the life of his wife, but also to her chastity. The deceased there was found in the room where his wife and his sister were sleeping, and Staten, being aroused, went into his wife's room and came in contact with an intruder and stabbed him. This statement of facts demonstrates that there is no similarity between the two cases.

In Reed v. State, 62 Miss. 405, this court said: ''If he [the defendant] had caught the offender in the act of adultery with his wife and had slain him on the spot, the crime would have been extenuated to manslaughter—such provocation in legal contemplation being sufficient to produce that brevis furor which for the moment unsettles reason.''

In Rowland v. State, 83 Miss. 483, 35 So. 826, 827, 1 Ann. Cas. 135, this court adopted with approval the statement of the law by GILPIN, C. J., in State v. Pratt, Houst. Cr. Cas. (Del.) 265, in this language: ''In order to reduce the crime from murder to manslaughter, it is necessary that it should be shown that the prisoner found the deceased in the very act of adultery with his wife. I do not mean to say that the prisoner must stand by and witness the actual copulative conjunction between the guilty parties. If the prisoner saw the deceased in bed with his wife, or saw him leaving the bed of the wife, or if he found them together in such position as to indi-

cate with reasonable certainty to a rational mind that they had just then committed the adulterous act, . . . it will be sufficient to satisfy the requirements of the law in this regard; and if, under such circumstances, he then and there struck the mortal blow, his offense would amount to manslaughter only.''

In the Rowland Case, on the facts, where the appellant killed his wife in attempting to kill one Thorn, after discovering him engaged in the act of adultery with appellant's wife, the court held that the appellant was not guilty of murder, saying: ''Accepting the story of the state's witness as absolutely true, deceased and Thorn were surprised by appellant under such conditions and amid such surroundings as to demonstrate with absolute certainty that they were then actually committing adultery. This fact alone, in legal contemplation, is adequate provocation to reduce the grade of the homicide, if then instantly committed, from murder to manslaughter.''

Our attention is not called to a state of facts in any given case where any court has held that, because the deceased had the reputation of being a degenerate in character, hearsay evidence of that character would be competent for the purpose of reducing the crime from murder to manslaughter, or for the purpose of showing the state of mind of the parties. The appellant did not discover his wife in any situation calculated to arouse any suspicion that there was wrongdoing between the deceased and his wife. The evidence was properly excluded.

Some of the witnesses said the deceased was known as Betty May Rayford, while other witnesses knew her as Betty May Griffin. She was living with a man, as his common-law wife, whose name was Griffin, and he recognized her as his wife. The appellant urges upon the court that he was entitled to the requested peremptory instruction because of this variance in the evidence as to the name of the deceased. In this record, there is no question of the identity of the deceased woman. Some

of the witnesses knew her by one name and some by another. There is no merit in the contention. See Woulard v. State, 137 Miss. 808, 102 So. 781.

Affirmed.