## JONES *v.* STATE.

[94 South. 851. No. 23122.]

1. HOMICIDE. *Dying declaration held material.*

Where there was a controversy as to whether deceased was shot in the back or was facing defendant and advancing upon him with a dangerous weapon, his dying declaration that he did not know who shot him, and that all he could remember was hearing the report and then falling, was material.

2. HOMICIDE. *Preliminary evidence held to render dying declaration competent.*

Evidence that immediately before making a dying declaration deceased, when asked by the doctor how he felt, told the doctor he could do him no good and that he was dying "just as fast as time can roll," *held* to warrant a finding that the declaration was made under a solemn sense of impending death so as to render it competent.

3. CRIMINAL LAW. *Instruction as to reasonable doubt held improper but not reversible error in view of other instructions.*

On a trial for murder, the court charged that the jury should not hunt for doubts or indulge in merely conjectural or chimerical doubts, but that doubts making them hesitate must be reasonable doubts arising out of the evidence or want of evidence; that the jury were not required to know that defendant was guilty before convicting and should not hesitate to find him guilty because able to say, outside of the evidence, that he might have been innocent; but that after considering all the evidence, if they believed beyond a reasonable doubt that he was guilty, they should discharge their duty fearlessly and say so by their verdict. *Held,* that this was difficult to understand and should have been refused, but it was not reversible error in view of many skillfully drawn and exceedingly liberal instructions granted defendant, repeatedly covering every required element of proof.

4. CRIMINAL LAW. *Instruction that interest of witness might be considered not error, though defendant's wife was his only witness.*

Under Code 1906, section 1923 (Hemingway's Code, section 1583), authorizing examination of any witness touching his interest, an instruction that in weighing testimony of any witness such interest as the witness might have might be taken into consideration was not erroneous, though defendant's wife was the only witness testifying to facts material to the defense.

5. HOMICIDE. *Evidence held to justify refusal of peremptory instruction and instruction excluding murder.*

On a trial for murder, evidence *held* sufficient to justify the refusal of a peremptory instruction, and the refusal of an instruction that in no event could the jury find defendant guilty of any higher crime than manslaughter.

APPEAL from circuit court of Humphreys county.

HON. S. F. DAVIS, Judge.

Sidney Jones was convicted of murder, and he appeals. Affirmed.

*Frank E. Everett,* for appellant.

We admit that the competency of dying declarations is always a question for the court, but the court often makes mistakes in admitting them. That is the ground of our first assignment of error. The dying declaration in this case, copied at page six of the attorney-general's brief, does not approach a dying declaration competent in evidence.

The declaration in the case of *Bell* v. *State,* 72 Miss. 508, is as follows: "I saw John when they brought him home the next day, after he was hurt. He told me when they brought him home that he was bound to die and he knew it, for he said: 'I can't live but a few days. I know Ed Bell has killed me. Will die in a few days. . . . I know I will die in a few days for I can't live this way. Ed Bell has killed me. I know it.' "

This declaration was held to be incompetent. In *Jones* v. *State,* 79 Miss. 318, the court said: "It was a fatal error

to admit in evidence the testimony of Gordon as to the dying declaration of Ella Bradley. It is manifest that she did not see, and could not possibly have seen who shot her, and that she said appellant shot her simply because he had threatened to shoot her. She was therefore clearly not testifying as a fact that Jones shot her, but was merely stating her opinion that he must have shot her, since he had told her he was going to do so. This was not competent."

In *Fannie* v. *State,* 101 Miss. 380, the following declaration: "I could not help myself. He just ran up and hailed me, and I turned around and he shot me the first fire right through. . . . Come carry me back to the doctor. I am shot to death. I am going to die. Make haste and get the doctor. I am bleeding to death. I am going to die. Don't bother me and get the doctor. Make haste, Mamma, and get the doctor, I am going to die," was held to be incompetent and inadmissible.

In *McNeal* v. *State,* 76 So. 628, the following declaration: "He said the boys, he never called any name, come up there and persuaded him off, and Frank shot him and did not have any cause, and that he did not do anything to him, and said now they got him. . . . 'I won't be with you much longer; I have got to leave you. Oh, Lord what a pity for Frank McNeal to shoot a poor boy like I am for nothing! I never done anything to Frank,'" was held to be incompetent, because it did not purport to state the facts of the homicide. Therefore, it was error to admit it as evidence.

The next place counsel is in error in his brief, is when he says that the case of *Thompson* v. *State,* 83 Miss. 289, has been expressly overruled, and he cites five cases at page eleven of his brief overruling the Thompson case. This statement, we submit, is inaccurate, in that, the authorities cited do not overrule the Thompson case, and the instruction in the case at bar is very different from the instruction in the Thompson case, and all of the cases cited by counsel. The instruction in the Thompson case is:

"The court instructs the jury that if there are two reasonable theories arising out of evidence of this case one favorable to the state, and the other favorable to the defendant, it is your duty to accept the one favorable to the defendant, although the one favorable to the state is the more reasonable and supported by the stronger evidence." Ths instruction was approved by Judge TRULY in that case.

In the *Rummels case,* 96 Miss. 92, the same instruction was asked and refused, and this court, through Judge SMITH, held that even if it should be held that this instruction correctly announced the law, it usually does not constitute reversible error, because the court had instructed the jury over and over again with reference to the reasonable doubt, and does not overrule the Thompson case.

In the *Roux case,* 97 Miss. 559, the same instruction was asked and in practically the same form as in the Thompson case, and this court said: "This instruction in substance is the same charge that was condemned by this court in the case of *Rummels* v. *State.*" But we submit that the Rummels case does not condemn this instruction, but simply holds that if the jury is properly instructed with reference to the reasonable doubt, the case will not be reversed because of the refusal of this instruction.

In the *Saucier case,* 59 So. 858, the same instruction was asked as in the Thompson case, and the court held that it was not error to refuse it, where the jury had been properly instructed by other instructions.

In the *Bradley case,* 91 So. 277, and *Wiley case,* 91 So. 906, which are cited by counsel as overruling the Thompson case the court simply adhered to its former ruling, that where the jury had been properly instructed as to the reasonable doubt, the refusal of the instruction asked in the Thompson case is not error.

But we direct the court's attention to the language of the instruction asked and refused in the case at bar, which makes it differ widely from the instruction in the Thompson case or any case cited by counsel, which instruction is

as follows: "The court instructs the jury for the defendant that if there are two reasonable theories in this case, if supported by the evidence, one pointing to the defendant's guilt, and the 'other to his innocence, and the jury have a reasonable doubt as to which theory is true, then, it is your sworn duty under the law to adopt a theory of innocence, etc."

Surely this is the proper instruction, for if there are two theories, (which is usually the case in all trials), and the jury be in doubt as to which is the correct theory, surely the law of the land is that the defendant be given the benefit of the doubt.

*H. Talbot Odom,* for appellee.

The competency of dying declarations is exclusively for the consideration of the court. Having once decided that it is competent, that the party was in the frame of mind required by the law to authorize the admission of his dying declaration, the power of the court over that question is at an end. *Gurley* v. *State,* 101 Miss. 190, 57 So. 165; *Marley* v. *State,* 109 Miss. 717, 69 So. 210.

Appellant says that statements offered as dying declarations, in order to be admissible, must be uttered by a sound and rational mind; second, that same must be made under a solemn sense of pending dissolution; third, and they must relate to the tragedy and state the facts of the homicide as to throw light on the question of guilt or innocence, and in support of this statement, cite the cases of *Bell* v. *State,* 72 Miss. 407; *Jones* v. *State,* 79 Miss. 318; *Fannie* v. *State,* 101 Miss. 380; *McNeal* v. *State,* 76 So. 628.

The state concedes that the law as applied to dying declarations, as stated in the above cases, is good law, but I respectfully submit that none of the above cases apply to the case at bar.

In practically all the cases cited by appellant, the court reversed these cases because the statements admitted as dying declarations, show that the deceased expressed some

hope of recovery. This is not so in the case at bar. In my opinion, the statement in question meets all the requirements of the most recent cases decided by this court. And in support of my contention I cite the following cases: *Echols* v. *State,* 110 Miss. 577, 70 So. 694; *Ealy* v. *State,* 91 So. 417; *McLeod* v. *State,* 92 So. 828.

It is next insisted that the court erred in granting the following instruction, marked Number 4 for the state and appearing at page 106 of the record: "The court charges the jury for the state that in trying this case you should not hunt for doubts, with the view of finding any excuse or apology for your verdict nor should you indulge in such doubts as are merely conjectural or chimerical; but the doubts which ought to make you pause and hesitate must be reasonable doubts, and they must arise out of the evidence or the want of evidence in this case. You are not required by the laws of this state to know that the defendant is guilty of the crime charged against him before you can convict him, and you should not hesitate to find him guilty because you are able to say, outside of the evidence, that he might have been innocent; but after carefully considering all the evidence, if you believe from all the evidence in the case beyond a reasonable doubt that he is guilty, then you should discharge your duty fearlessly under your oaths and under the laws and say so by your verdict."

It will be observed that this instruction is identical with the instruction complained of in the case of *Smith* v. *State,* reported in 103 Miss. 356, 60 So. 330. The only exception being that in the case at bar, on the tenth line of the record of the instruction in question the word "because" is used, while in the *Smith case, supra,* the word "before" was used. I am unable to see where this difference would render the instruction bad, for the instruction in the case at bar tells the jury that they must consider doubts that arise out of the evidence, or the want of evidence. Chief Justice SMITH rendered the opinion in the *Smith case, supra,* at page 371.

*Brown* v. *State,* 72 Miss. 95, 16 So. 202, and *Burt* v. *State,* 72 Miss. 408, 16 So. 342, 48 Am. St. Rep. 563.

It might be said that the instruction in question is not as clear as it might have been.   However, if this be true, then I submit that any possible harm to the defendant arising out of this instruction, was absolutely cured by the granting of instruction Number 5 for the appellant.

This instruction should not have been given, and the court in granting the same cured any possible error in granting instruction No. 4 for the state.   As stated, the granting of instruction No. 12 for appellant, was error. The case of *Thompson* v. *State,* 83 Miss. 289, having been expressly overruled in the following cases: *Runnels* v. *State,* 96 Miss. 92; *Roux* v. *Gulfport,* 97 Miss. 559; *Saucier* v. *State,* 59 So. 858; *Brady* v. *State,* 91 So. 277; *Urley* v. *State,* 91 So. 906.

It is next insisted by counsel that the court erred in granting instruction No. 5 for the state, which is as follows and appears on page 107 of the record: "The court charges the jury, that they are the sole judges of the weight of the testimony and the credibility of the witnesses; and in passing upon the testimony of any witness and determining what weight they shall give such testimony, they have a right to take into consideration the interest such witness may have in the result of the trial, if any such has been shown by the testimony in this case."

Appellant's objection to this instruction is that it singles out the testimony of the appellant's wife.   They contend that inasmuch as this court has held that it is improper to single out the testimony of the defendant, that this applies with equal force to that of the defendant's wife.   Counsel cite a number of cases holding that such instruction is improper, where the defendant is the only witness testifying in his behalf.   These cases are as follows: *Chatam* v. *State,* 102 Miss. 181; *Smith* v. *State,* 90 Miss. 115; *Woods* v. *State,* 67 Miss. 575; *Gaines* v. *State,* 48 So. 192.

The state does not deny that the foregoing cases announce a correct rule of law on this subject.   Such an in-

struction was also held to be erroneous where the defendant was the only material witness in his behalf in the cases of *Buckley* v. *State*, 62 Miss. 705; *Piggott* v. *State*, 107 Miss. 552.

But the doctrine announced in the foregoing cases was materially modified by our court in the cases of *Viol* v. *State*, 94 Miss. 365, 48 So. 725; *Poole* v. *State*, 100 Miss. 158, 56 So. 184; *Murphy* v. *State*, 119 Miss. 220, 80 So. 636.

The foregoing cases hold that such an instruction is not erroneous where other witnesses than the defendant testify, and to whom the instruction might be made to apply.

In the case at bar the instruction in question might apply with equal force to the witness Jake Young, who showed undoubtedly that he was an interested witness, and that he had taken an unusual part in the trial of the case. It is almost unheard of that an officer of the law who should assist the prosecution in a case, would turn against the prosecution and aid and assist the defense in every manner possible. The evidence of this witness attempted to impeach the principal witnesses for the state, and as stated above, this instruction could have been directed to the testimony of this particular witness.

COOK, J., delivered the opinion of the court.

The appellant, Sidney Jones, was convicted in the circuit court of Humphreys county of the murder of Charley Harper, and sentenced to the penitentiary for life, and from this conviction and sentence this appeal was prosecuted.

The facts necessary to be stated are substantially as follows: For some weeks prior to the shooting, the appellant had been living with a woman named Sarah White, who had previously been intimate with the deceased. On the afternoon of the shooting, appellant and Sarah White came to Isola together. After reaching there, they separated, and Sarah White proceeded to the home of Ethel Lee Glen,

where she found Ethel Lee Glen, Amanda Smith, and Mary Blanden, all negro women. The Glen home is described by the witnesses as a shotgun house, composed of a front gallery, front room, middle room, and kitchen, with all these rooms adjoining, one behind the other in the order named. While these four women were in the middle room of this house, the deceased, Charley Harper, came in. Ethel Glen and Amanda Smith, witnesses for the state, testified that, after the deceased had been in this room a short while, he asked for a drink of water; that, upon being informed that there was water in the kitchen, he proceeded into the kitchen; that Sarah White also went into the kitchen; that after these parties went into the kitchen they were standing in a position where they could be seen by the witnesses, the deceased leaning against the door and Sarah White near the stove by the window; that they heard no conversation or dispute between the deceased and Sarah White; that at this point the appellant came into the room where they were and called for Sarah, and then, with an oath, pulled out his pistol; that they (the witnesses) then ran out of the house; that when they had run only a short distance they heard a pistol fire, and almost immediately the appellant ran out of the house, the pistol still being in his hand.

Sarah White, who married appellant after the shooting and before the trial, was offered as a witness for appellant, and she testified that when Charley Harper, the deceased, came into the house, she was standing at the kitchen door drinking water; that deceased told her that he wanted to talk to her and jerked her into the kitchen; that she protested and attempted to pull loose from him, but he struck her on the side of the head and knocked her onto the stove; that she then looked out through a window and saw appellant coming; that she told deceased that appellant was coming and if he did not turn her loose she would tell appellant what he was doing; that Ethel Lee Glen then ran into the room and informed deceased that appellant was approaching and ordered him to release Sarah; that

deceased then commenced beating her, and continued to beat her until appellant appeared at the door of the room; that deceased knocked her down several times, once after appellant appeared at the door; that appellant ordered deceased to stop beating her; that deceased then picked up a fork from the table and advanced toward the witness and appellant, saying, with an oath, "I'll fix both of you bastards;" that appellant then fired one shot; that she was on her knees between appellant and deceased when deceased picked up the fork and started toward them; and that during the time deceased was beating her she was making an outcry.

The only wound found on the body of deceased was a hole in the back part of the neck, and there was some effort to show by Dr. Taylor, a witness for defendant, that this wound had the appearance of an exit wound, but on cross-examination this witness admitted that, since he was unable to find any other wound, even in the mouth or throat of deceased he was unable to say that the wound in the back of the neck was not an entrance wound.

Shortly after the shooting, the deceased made a statement to his brother, Scott Harper, which was offered by the state as a dying declaration; the statement and testimony offered before the court on the preliminary investigation to determine the admissibility of the alleged dying declaration being as follows:

"Q. What was his answer to the doctor when he asked him how did he feel; begin there and tell just what you heard him say? A. He asked Dr. Taylor, 'Is that you, Doctor?' Dr. Taylor told him, 'Yes, this is me, Charlie,' and he told Dr. Taylor, 'You can't do me no good; I am dying and I am going on to Glory just as fast as time can roll,' and he told Dr. Taylor Jesus was his doctor.

"Q. Then immediately following that what, if anything, did he say in reference to how the difficulty occurred? A. He said he didn't know who shot him; all he could remember was hearing the report from the gun, and the next

thing he remembered was falling. That is all he knew about it."

On cross-examination this witness, Scott Harper, denied that the deceased said, in the presence of Dr. Taylor, that he wanted to go to Dr. Miller. Upon this testimony the court admitted the dying declaration. Dr. Taylor, a witness for the defendant, was examined in reference to the dying declaration, and he testified to substantially the same statement as the state witness, Scott Harper, but also testified that the deceased said several' times that he wanted to go to Dr. Miller.

The first and second assignments of error are based upon the admission of the dying declaration, the contention being that under the testimony above set out the trial judge was not warranted in finding that the declaration was made under a sense of impending death.

In view of the fact that it was in controversy as to whether the deceased was shot in the back, or whether at the time he was shot he was facing appellant and advancing upon him with a dangerous weapon, the statement made by deceased was material and we think the testimony offered at the preliminary examination as to its competency was sufficient to warrant the court in finding that the declaration was made under a solemn sense of impending death, and that it came within the rules announced in the numerous decisions of this court dealing with that subject.

It is next insisted that the court erred in granting the state the following instruction:

"The court charges the jury for the state that in trying this case you should not hunt for doubts, with the view of finding any excuse or apology for your verdict, nor should you indulge in such doubts as are merely conjectural or chimerical; but the doubts which ought to make you pause and hesitate must be reasonable doubts, and they must arise out of the evidence or the want of evidence in this case. You are not required by the laws of this state to know that the defendant is guilty of the crime charged

against him before you can convict him, and you should not hesitate to find him guilty because you are able to say, outside of the evidence, that he might have been innocent; but after carefully considering all the evidence, if you believe from all the evidence in the case beyond a reasonable doubt that he is guilty, then you should discharge your duty fearlessly under your oaths and under the laws, and say so by your verdict."

This instruction is specially criticized on account of the use of the word "because" instead of "before" in the sentence reading, "You should not hesitate to find him guilty because you are able to say, outside of the evidence, that he might have been innocent;" the contention of counsel for appellant being that this sentence precludes the jury from considering any doubts which may arise from a lack of evidence. It is difficult to understand the exact meaning of the instruction as given, and it should properly have been refused; but in view of the many skillfully drawn and exceedingly liberal instructions granted the defendant, covering repeatedly every element of proof required for conviction, we do not think this instruction could possibly have misled the jury as to the quantity of evidence or degree of proof required for conviction, and we have reached the conclusion that it does not constitute reversible error.

Appellant next assigns as error the action of the court in granting an instruction which told the jury that, in determining what weight they should give to the testimony of any witness, they had the right to take into consideration the interest such witness may have had in the result of the trial, if any such interest had been shown by the testimony in the case. It has been decided by this court in a number of cases that, where the defendant is the only witness testifying in his own behalf, this instruction is erroneous and, while the defendant did not testify in this case, counsel contends that this instruction singles out the wife of defendant, and that the rule applies as well where the wife of the defendant is the only witness testifying to material facts in her husband's defense. We do not think this con-

tention is maintainable. The wife occupies the same position as any other witness, and under section 1923, Code of 1906, section 1583, Hemingway's Code, any witness may be examined touching his interest in the cause.

Finally, appellant assigns as error the refusal of certain instructions requested by the defendant, one of which was a peremptory instruction to find the defendant not guilty. Under the proof in this record this peremptory instruction was properly refused. Likewise, the instruction that in no event could the jury find the defendant guilty of any higher crime than manslaughter. At the request of the state a manslaughter instruction was granted, and we do not think there is any reversible error in this record.

*Affirmed.*