# Powers *et al. v.* State.

(Division B.  Dec. 11, 1933.  Suggestion of Error Overruled Jan. 22, 1934.)

[151 So. 730.  No. 30577.]

542

Ross R. Barnett and D. C. Enochs, both of Jackson, for appellants.

544

**W. D. Conn, Jr.,** Assistant Attorney-General for the State.

Argued orally by Ross Barnett and D. C. Enochs, for appellant, and by W. D. Conn, Jr., for the State.

Anderson, J., delivered the opinion of the court.

Appellants were indicted, tried, and convicted in the circuit court of Madison county of the crime of grand larceny and sentenced to the state penitentiary for a term of four years. From that judgment they prosecute this appeal.

The only issue of fact in the case was as to the identity of the persons who committed the crime.

On the night of March 30, 1932, at about eleven o'clock. two white men entered the home of Ed Harris, a negro living in Canton, and stole from him, in the presence of himself and his wife, five hundred dollars in money, a diamond stickpin of the value of one hundred dollars, a diamond ring of the value of one hundred dollars, a watch of the value of twenty-five dollars, and a pistol of the value of ten dollars. At the time of the larceny the home of Ed Harris was occupied alone by himself and his wife, Ethel. They testified, in substance, that at about eleven o'clock on the night of March 30, 1932, two white men came to their home, knocked on the door, and were admitted; that they represented themselves to be United States government marshals and presented a

paper claimed by them to be a search warrant for the search of the house for narcotics; that they went into one of the rooms of the house where there was an iron safe in which Ed kept his money and valuables after the banks began to fail; that they took out of the safe five hundred dollars in money, a stickpin, a diamond ring, and a pistol; that they then took Ed Harris outside of his home on the pretense of taking him to the city hall to give him a receipt for the money and personal property they had taken; that when they got outside of the home, appellant Brennan put his pistol against Ed's back and made him give up his watch; that thereupon these men sent Ed one way and they got in a car and left in the direction of Jackson; that when they were in the home the electric lights were on; they had on no masks and there was no difficulty in seeing their faces and features. On the trial, Harris and his wife positively identified appellants as the persons who committed the crime.

The defense of each of the appellants was an alibi. Appellant Powers and his wife and daughter and the latter's beau testified that on the night of March 30. 1932, the night of the crime, Powers was at his home in Tampa, Fla. While appellant Brennan and his wife testified that they spent the night in Jackson, in this state, at the Ardmore Inn.

Appellants made a motion for a new trial, the ground of which was newly discovered evidence. The evidence was that of Jack Garnett, who, it was shown, would testify on another trial that Ed Harris had told him on or about the 5th day of April, 1932, that he (Harris) was personally acquainted with and knew the names of the men who committed the crime; that he had known them for sixteen years; that they lived in Canton (neither of the appellants lived in Canton); and that he did not tell their names because he owned property in Canton and would have to leave there if he did so. The motion

was supported by an affidavit of Jack Garnett. It was overruled. Appellants argue that the action of the court in overruling the motion is reversible error. They rely principally upon Bates v. State (Miss.), 32 So. 915 (not reported [in State Reports]), and Watson v. State, 96 Miss. 369, 50 So. 627. In the Bates Case the newly discovered evidence would have discredited that of the principal state's witness. It was, therefore, impeaching evidence. In its opinion the court stated that the Attorney-General admitted that which the court found to be true, "that the propriety of this conviction on the facts is questionable." For that reason the court held that a new trial should have been granted on the showing of newly discovered evidence, although such evidence tended to impeach that of one of the state's witnesses. The Watson Case was much the same character of case; there the defendant was convicted of murder on evidence of such doubtful character as to make it gravely questionable as to whether the court should not vacate the verdict independently of other considerations. The court resolved the doubt in favor of a new trial upon a consideration of the newly discovered evidence, although such evidence was corroborative of the defendant's evidence and tended to impeach that of the state. Among the decisions of our court on this question, these two cases stand out alone. We do not mean they are in conflict with other decisions, but we do mean there is a clear ground of difference between them, and that difference is: In both of these cases the evidence for the state was so weak that the court would probably have granted a new trial on that ground alone. if there had been no showing of newly discovered evidence, that was clearly indicated by the court.

This is not that character of case. Here, that the crime was committed is undisputed. The question, and the only question, is whether appellants are the guilty parties. The evidence of Ed Harris and his wife was

believed by the jury, and it was of such character as not to be subject to the criticism of the court in the Bates and Watson Cases.

In both criminal and civil cases this court has often considered and decided the question of whether a new trial should be granted on newly discovered evidence where such evidence is corroborative of that of the movant, or impeaching of that of the adversary. Without break in the decisions it has held that such evidence alone is no ground for a new trial. We refer to some of the criminal cases: Overton v. State, 101 Miss. 607, 58 So. 219; Steward v. State, 154 Miss. 858, 123 So. 891; Smith v. State, 102 Miss. 330, 59 So. 96; Wilson v. State (Miss.), 97 So. 721; Campbell v. State, 123 Miss. 713, 86 So. 513. Manifestly, Garnett's testimony could have had no other effect than to impeach that of the state's witnesses Ed Harris and his wife. The court committed no error in overruling the motion for a new trial.

After the adjournment of the court at which appellants were convicted, they presented a petition to the trial judge for a writ of coram nobis, praying for a new trial. They set out in their petition that, after the adjournment of court at which they were convicted, two other persons, Lewis Bell and Roy Davenport, residents of the city of Jackson, had voluntarily confessed that they committed the crime for which appellants had been charged and convicted and had made an affidavit to that effect, setting out fully how the crime was committed by them. This affidavit was made a part of the petition for the writ. In the petition, which was sworn to by appellants and by their attorneys, it was set out that this was newly discovered evidence; that neither appellants nor their attorneys knew of it before or during the trial or during the term of the court at which the trial was had; and that they had exercised due diligence in searching out evidence on behalf of appellants and preparing the case for trial. The court granted the writ. There

was a trial at which the affidavit of Lewis Bell and Roy Davenport, confessing the crime, was introduced in evidence, and, in addition, appellants offered Bell and Davenport as witnesses. They refused to admit making the affidavit and refused to testify, upon the ground that, under the Constitution, they could not be forced to give selfincriminating evidence. The court denied a new trial. That action of the court is assigned and argued as reversible error. Appellants contend that on another trial the written confession of Bell and Davenport would be admissible in their behalf if they should refuse to testify, as they probably would.

Appellants say in their brief that all the courts hold that on a trial for crime the defendant may offer evidence to show that another committed the crime, and to support that statement refer to Roundtree v. State, 107 Miss. 166, 65 So. 125. That was a very different case from this. In that case the court held that, where a defendant convicted of crime made a motion for a new trial, on the ground of newly discovered evidence, and supported his motion by affidavits that another person had confessed to the crime for which the defendant had been convicted and had pleaded guilty to the same, the motion should be sustained.

The confession of Bell and Davenport was not brought before the court on the motion for a new trial, but, as above stated, it was produced, after the conviction and after the court had adjourned, in the coram nobis proceeding. Brown v. State, 99 Miss. 719, 55 So. 961, 37 L. R. A. (N. S.) 345, is more nearly in point than the Roundtree Case. In that case appellant, Albert Brown, was charged with the murder of Alonzo Addison. His trial resulted in a conviction of manslaughter. From that judgment he appealed to the Supreme Court where the judgment was reversed and the case remanded. 98 Miss. 786, 54 So. 305, 34 L. R. A. (N. S.) 811. He was again tried and convicted of the same offense and prose-

cuted a second appeal. On the second trial he offered to prove by the sheriff and chancery clerk of the county that his brother, Henry Brown, who had not been indicted for the crime, stated to them that the defendant, his brother, had suffered long enough; that he was the guilty man; that he slew Addison; that the defendant was not present and had nothing whatever to do with it; that in pursuance of this confession Henry Brown was taken into custody by the sheriff and held a prisoner in the county jail for several months; that his confession and incarceration took place during the pendency of the former appeal of the case against his brother; that before the reversal of the judgment on that appeal the grand jury investigated the confession made by Henry Brown and declined to indict him; and that he was discharged from custody and on the second trial he did not testify his whereabouts being unknown. The trial court refused to admit this evidence. The court held that it was well settled by the authorities that confessions and admissions on the part of third persons made out of court were not admissible in exculpation of those on trial for crime; that such confessions and admissions were merely hearsay and excluded for this reason, although other reasons for their exclusion existed. In support of its holding, the court referred to numerous decisions of other states. The court indulged in the following criticism of Professor Wigmore's opinion:

"Wigmore, in his learned work on Evidence, while admitting that the weight of authority sustains the rule as stated, condemns it as unsound and barbarous. 2 Wigmore, section 1476. In this he finds no support in the other text-writers on the subject, nor in the legal encyclopedists, who perhaps had greater deference for the opinions of those learned judges who, daily witnessing the application of the law, refused to sacrifice its wholesome principles to untried theory. Best on Ev. (3d Am. Ed.), page 73; 2 Rice, Cr. Ev., page 136, section

87; Wharton, Cr. Ev. (9th Ed.), page 176, section 225; 12 Cyc., page 434. The learned author above named criticises as 'curious' and suggesting a 'fantastic suspicion,' the following language employed by the Supreme Court of Georgia in the case of Lyon v. State, supra [22 Ga. 399] : 'All one defendant would have to do would be to admit that his guilty accomplice was innocent and that he himself had perpetrated the crime, absent himself so as to enable the party on his trial to have the benefit of his admission, and, after his acquittal, appear, demand his trial, and prove by the evidence of the acquitted party that he was in fact the guilty person.'

"We are unable to concur in the author's estimate of the above reasoning. It commends itself to this court as entirely sound, and, in view of the action of the grand jury in discrediting the confession and refusing to return an indictment against the declarant on the strength of it, we have little doubt that the case in hand itself affords an illustration of such attempts to bring about a miscarriage of justice. The rule excluding such confessions itself suggests the reason why they have not been more frequently resorted to in behalf of the guilty. The confession in question was made out of court, was not supported by the oath of the party confessing, and the party was never subjected to cross-examination, which might very quickly have disclosed the falsity of the confession and the motive that prompted it. The law, in determining what is hearsay, does not admit what a witness states some other person told him, any more than it admits what still another person may have imparted to the one next in the line of communication. It is all hearsay; and no just exception can be made because the party confessing has put himself in a position of some hazard. Many motives, apart from the love of truth and justice, induce men to assume the gravest risks. Among the strongest of these is family affection, and it is observable that in this case the property against

which the trespass was directed was that of Henry Brown and not his brother, the accused, and that in the confession proposed to be proved Henry Brown, while claiming to be the culprit, stated that his brother 'had suffered long enough about the matter.' The extreme case of a confession on the gallows by one claiming to be the true offender, employed by Wigmore to illustrate his view, affords no ground for the relaxation of the rule; for the experience assuring us that the last breath of men not wholly bad is sometimes employed in the asseveration of a falsehood justifies the rejection of the hearsay statements of a malefactor who, having no longer any concern as to his own fate, may wish to serve a pal, a kinsman, or a friend. Even dying declarations, which are restricted to trials where the declarant was the victim of a homicide, although they derive additional solemnity from the fact of approaching death, are admitted really for necessity, and in order to reach those manslayers who perpetrate their crimes when there are no other eyewitnesses.''

That criticism applies with equal force to Judge Holmes' dissenting opinion in Donnelly v. U. S., 228 U. S. 243, 33 S. Ct. 449, 57 L. Ed. 820, Ann. Cas. 1913E, 710. There is no conflict between the Roundtree Case and the Brown Case. There is this difference: In the Roundtree Case the defendant, on his motion for a new trial, sought to show by newly discovered evidence that another person had not only confessed the crime but had pleaded guilty thereto. In the Brown Case a plea of guilty, or conviction of the crime, was not added to the confession; and that is true of the present case. If Lewis Bell and Roy Davenport had either pleaded guilty to, or been convicted of, the crime for which appellants were convicted, the Roundtree Case would have been in point on appellants' motion for a new trial. The fact that Bell and Davenport's confession was in writing and sworn to added nothing whatever to its value as evidence. It was

an extrajudicial act—there was no authority of law for it. It had no more validity and weight than their oral extrajudicial confession, testified to by credible witnesses, and held to be inadmissible in the Brown Case.

Coram nobis lies to reverse a judgment for an error of fact not appearing on the face of the record, which fact was unknown to the court and which, if known in season, would have prevented the rendition and entry of the judgment challenged. The purpose of the proceeding is to correct a judgment of the same court in which it was rendered. By this means a new trial cannot be granted upon the ground of newly discovered evidence. Within this rule fall all defenses existing at the time of the commission of the crime, as well as all verdicts against the evidence, and newly discovered evidence. White v. State, 159 Miss. 207, 131 So. 96; Cummins v. State, 144 Miss. 634, 110 So. 206; Fugate v. State, 85 Miss. 94, 37 So. 554, 107 Am. St. Rep. 268, 3 Ann. Cas. 326.

Appellants argue, however, that the confession of Bell and Davenport was not newly discovered evidence of a fact existing at the time of the trial. Their position is that the confession was a fact that took place after the trial and was then discovered, and that it was a fact so potent that it might have resulted in a different verdict, and, under the law, their remedy was a writ of error coram nobis. The fault of that contention is that the newly discovered evidence was not the confession of Bell and Davenport, but the fact of their guilt of the crime as evidenced by the confession; and this fact, of course, existed, if true, before and at the time of the trial.

In the Cummins Case the defendant in his petition for the writ of error coram nobis set up that he received a letter from Jennie Vaughn, a state's witness, in which she stated that her testimony was false; that she was compelled to testify against him by her brother and uncle. The court held that the writ did not lie in that case; that to set aside a conviction merely because some witness,

subsequent to the trial, "confessed, or stated, that his testimony was not true," might result in endless trials; that the credibility of a witness and the truthfulness of his testimony was an issue in the main trial. It is true that case is not squarely in point, still it is illustrative of the question. The force used against the witness Vaughn existed at the trial, while the discovery of the evidence of it took place after the trial. It seems fruitless, however, to pursue the discussion of this question further, for if the confession of Bell and Davenport would have been inadmissible in the first trial, as we have above held, certainly it would not be admissible in any subsequent trial granted either on motion during the term or in a coram nobis proceeding had after the term.

On cross-examination of Ed Harris by the appellants' attorney, he testified that T. H. Riddell told him that he (Riddell) could not swear appellant Powers committed the crime, but about the time of its commission Powers came to his house at night and drove his car behind the house and stopped and spent the night in his car, and at the time Powers had a gun with him. Later appellants offered Riddell as a witness to impeach the testimony of Harris, by showing that Riddell made no such statement to Harris. On the objection of the district attorney, this evidence was ruled out, and that action of the court is assigned and argued as error. The action of the court was based on the principle that the evidence was addressed to a collateral issue. In order to determine whether a matter is collateral to the main issue the question is: Could the cross-examining party prove such matter in support of the main cause? Cofer v. State, 158 Miss. 493, 130 So. 511; Barnes v. State, 152 Miss. 250, 119 So. 172; Walker v. State, 151 Miss. 862, 119 So. 796. Under the law, could appellants have introduced Riddell on the issue of their guilt to show by him that he made no such statement to Ed Harris? We think, under the authorities, to ask the question is to answer it.

Appellants assign and argue as error the giving of the following instruction for the state:

"The court instructs the jury of the state that in trying this case you should not hunt for doubts with the view of finding any excuse or apology for your verdict, nor should you indulge in such doubts as are merely conjectural, but the doubts which ought to make you pause and hesitate must be reasonable doubts and they must arise out of the evidence or from the want of evidence in this case. You are not required under the law of this state to know that the defendants are guilty of the crime charged against them before you can convict, and you should not hesitate to find that they are guilty, because you are able to say, outside of the evidence, that they might have been innocent, but, after carefully considering all of the evidence in the case, if you believe beyond a reasonable doubt that they are guilty, you should discharge your duty under the law and under your oaths and say so by your verdict."

Substantially this same instruction was given for the state and considered in Smith v. State, 103 Miss. 356, 60 So. 330; Jones v. State, 130 Miss. 703, 94 So. 851; Harris v. State, 135 Miss. 171, 99 So. 754, and Floyd v. State (Miss.), 148 So. 226, 232. In those cases the court held that the instruction might well have been refused, but the giving of it was not reversible error. In the Floyd Case the court used this language: "The giving of this instruction does not constitute reversible error. It could have been refused. It does not, as said in another case, shed any light upon the case, but we would not reverse for this instruction."

Appellants complain of the giving of the following instruction for the state:

"The court instructs the jury for the state that you are the sole and only judges of the truthfulness and credibility of the witnesses who have testified in this case and if you believe any witness or witnesses have knowingly

and corruptly sworn falsely to any material matter in this case then you may wholly disregard the testimony of such witness or witnesses in making up your verdict.''

The criticism of the instruction is that it did not require that the jury believe from the evidence any witness or witnesses had knowingly and corruptly sworn falsely, etc. It will be observed that ''from the evidence'' was left out of the instruction. The criticism of the instruction is well founded, but the error was cured in that appellants asked for and obtained the following instruction:

''The court instructs the jury for the defendant that if you believe from the evidence in this case that any witness has sworn falsely, knowingly and corruptly to any material fact, then you may wholly disregard the entire evidence of such witness.''

Construing these two instructions together in connection with all the other instructions given in the case, the jury was not misled. It knew from the instructions, taken together, that whatever fact it found had to be based on the evidence.

Affirmed.