## Commonwealth v. Pfeiffer

*Thomas E. Cogan,* for petitioner.

*John H. Maurer,* district attorney, and *Americo V. Cortese,* assistant district attorney, contra.

CRUMLISH, J., December 18, 1942.—This is an application for a time-honored writ, coram nobis residant.

The petitioner was indicted in this court as of the above sessions and number, first count, burglary; second count, receiving stolen goods. Having pleaded not guilty, she was tried before the writer of this opinion and a jury, on March 7, 1941, and found not guilty on the count charging burglary, and guilty on the count charging receiving stolen goods. Eo die, sentence was suspended and she was placed on probation for a period of three years.

In her petition, she alleges that she is innocent of the offense of which she was convicted; that the real person who committed this offense was one Franklin Doughty, alias Jack Thomas, who was indicted in this court as of June sessions, 1940, no. 476, and October sessions, 1942, nos. 606, 607, and 608, charging him

in each bill with burglary and receiving stolen goods; that he pleaded guilty to the charges contained in the said bills and is presently undergoing the imposed sentence of six to twelve years, in Philadelphia County Prison, on the last-enumerated bills; that bill no. 476, June sessions, 1940, involved the facts and circumstances out of which she was indicted, tried, and sentenced; further, that the said Doughty has confessed to the police authorities of Philadelphia County that he was the one who perpetrated the crime for which the petitioner was convicted; and has expressed his willingness to appear in court to testify: (1) That the petitioner was innocently in the automobile in which the stolen property was discovered, and (2) that she had no knowledge that the said property was in any way questionable.

The district attorney has filed an answer in which he alleges, inter alia, that the said Doughty, having escaped after the burglary for which he was indicted under bill no. 476, June sessions, 1940, was placed on trial November 2, 1942; that the said petitioner has taken no action, since the date of her release on probation, until the execution of this petition, November 19, 1942; that, admitting Doughty was the perpetrator of the crime of burglary, the petitioner, even if innocent of this crime, could have been and was guilty of the crime of receiving stolen goods; that the petitioner received a fair and impartial trial; and that there are no errors of fact which were not in issue at the petitioner's trial which affected either the validity or regularity of the judgment entered therein; and further, that the petitioner has permitted entirely too much time to elapse before taking action upon any alleged errors of fact.

At the hearing, Doughty testified as to the facts and circumstances under which the robbery in question was committed. He said that, although he was a married man at the time of the commission of the crime, he

had been in the habit, prior and subsequent to his marriage, of taking the petitioner out for automobile rides. On this particular occasion, which happened to be a Sunday evening, they "rode around", and about 11:30 p.m. he brought the automobile to a standstill on Baltimore Avenue, in the neighborhood of a radio store. He then said to the petitioner: "Wait a minute, I will be back," and went to a radio store a short distance away, which he entered, and in his words: "I just walked over and I grabbed what I could and I said to Hannah [Pfeiffer, petitioner] I will put these on the floor." He said, in further describing the loot and his disposition of the same: "They were little model radios, just hand radios, and I said, 'I'll be back in a minute', and she says, 'Where are you going now?' And I says—I don't say anything, and went back. I saw two guys who were walking up, I guess, from Forty-seventh Street." After observing the two individuals enter the burglarized radio store and then walk to the car in which the petitioner was sitting, Doughty concluded that "they must be the owners of the store." He watched events transpire for about five minutes and, when the police officers arrived, left the scene and went to his home. He remained in the city (although indicted as a fugitive) until apprehended. He was in the city immediately after the offense in question occurred, February 6, 1940, and, thereafter, remained in the city until October 8, 1942, when he was recognized on the street by a police officer and taken into custody. He testified that he did not see the petitioner until maybe two or three months" after she was released on probation and then only as the result of an accidental meeting on the street.

Petitioner testified that she knew Doughty was a married man with a child when she was going out with him, and on the evening of the commission of the burglary had been riding around with him for about 2½ to 3 hours beforehand; that it was three or four months before she got in touch with Doughty after her

release on probation and at that time she accidentally met him on the street; and that at no time did she report his whereabouts to the police authorities, or take any steps to question the judgment entered against her in these proceedings until after Doughty was arrested, sentenced, and committed as aforesaid. She was asked:

"Q. When you were then on the street why didn't you tell the police that he was the man who had stolen the radios and gotten you into trouble?

A. After I went through this, I didn't want to bring it up again.

Q. But you knew Frank was around?

A. I didn't see him face to face.

Q. You didn't see him but you knew he didn't leave the city but was at home and you saw him a couple of months after that and from that time on?

A. Yes, I did.

Q. And, you didn't tell the police?

A. No.

Q. And you didn't do anything about it?

A. I just said I didn't want. . . ."

The origin and the office of the writ of coram nobis residant has many times been ably traced and defined. See Commonwealth ex rel. v. Ashe, 28 D. & C. 573 (1937), opinion by Hirt, P. J.; Commonwealth v. Valerino, 32 D. & C. 363 (1938), opinion by Brown, Jr., J.; Commonwealth ex rel. v. Ashe, 44 D. & C. 337 (1942), opinion by Rice, P. J.; Sanders v. State, 85 Ind. 318 (1883); United States v. Plumer et al., 3 Cliff. (U. S.) 28 (1859); Freedman: "The Writ of Error Coram Nobis", 3 Temple L. Q. 365 (1929); 24 C. J. S. 143, §1606. See also Day v. Hamburgh, 1 Browne 75 (1808), for proceedings and form of first writ of coram nobis issued out of the Court of Common Pleas for the First Judicial District of Pennsylvania. In Durand v. Halbach et al., 1 Miles R. 46, 49, 50 (1835), there is this definition:

"The writ of error *coram nobis* was designed to enable a court which had committed no error in matter of law, to inquire whether they have, in consequence of an *error in fact*, given a judgment which, but for that error, would not have been pronounced; and if the error in fact is admitted, or found to exist by the verdict of a jury upon an issue joined thereon, then to revoke said judgment."

In these days, a writ of coram nobis (or coram vobis) [1] resident may be defined as follows: A common-law writ issuable out of a court of record, in the absence of adequate statutory remedy, and directed to the judges thereof to review and cause to be corrected, after term time, a judgment entered therein, because of some error of fact not appearing on the face of the record, which error was not due to fault on the part of the court, or of the party seeking relief, or which was not made known because of fraud or duress, and which would have prevented the entry of the judgment.

While there are a number of civil cases recognizing the existence of the writ of coram nobis in Pennsylvania, there are only four reported cases, and these of recent origin, in which the writ was sought in criminal proceedings. See Commonwealth ex rel. v. Ashe (1937), supra, Commonwealth v. Shemory, 46 Dauphin 156 (1938), Commonwealth v. Valerino, supra, and Commonwealth ex rel. v. Ashe (1942), supra.

Reviewing the facts of this case in the light of the above definition of the writ of coram nobis (or coram vobis) resident, the petitioner has not convinced us that there was error of fact unknown to the court, at the time of her trial, *through no fault on her part.*

The record discloses that the petitioner, at the time of her indictment, February 23, 1940, was at liberty on bail. On December 12, 1940, when the case was first listed for trial, she failed to appear and a bench

---

[1] See Devereux v. Roper, 1 Phila. 182 (1851): Commonwealth ex rel. v. Ashe (1937), supra, at pp. 575, 576.

warrant was issued. Being apprehended thereon and committed to custody, she appeared before the writer of this opinion in this court, on March 3, 1941, and being arraigned pleaded not guilty, was tried, and a verdict was rendered as above stated.

Taking into consideration the period of time that elapsed between the finding of the true bill on February 23, 1940, and the eventual date of petitioner's trial, March 3, 1941, during most of which time the defendant was at liberty, and the further fact, developed at the hearing, that Doughty, who is now alleged to be the real perpetrator of the crime, was during all this time within the jurisdiction of this court, it is evident that petitioner had ample opportunity to produce him as a willing witness or to secure the assistance of the proper authorities to enforce his attendance as a witness at her trial. The record is barren of any attempt to produce Doughty as a witness. Petitioner was lacking in due diligence and was guilty of negligence in not producing the evidence at her trial which she now seeks to introduce: Commonwealth ex rel. v. Ashe (1937), supra, p. 576; Commonwealth v. Valerino, supra, p. 365. Nor are we convinced that the evidence which petitioner seeks to rely upon in support of her application for the relief afforded by the writ of coram nobis is available as after-discovered evidence: Commonwealth v. Shemory, supra.

Furthermore, the evidence which the petitioner now seeks to rely on, even if it had been admitted at her trial, would have been no more than the evidence of a self-confessed accomplice offered in contradiction of the Commonwealth's testimony and would have been for the jury to consider under proper instructions. What the petitioner in the instant case seeks to do is to retry the issue. The writ of coram nobis is not available for this purpose. As aptly stated by Judge Francis Shunk Brown, Jr., in Commonwealth v. Valerino, supra, at page 366, ". . . the purpose of the writ is

not to reëxamine and retry the issue joined upon the plea of not guilty. . . ." It has been held that a confession of guilt of one other than the applicant for the writ is not sufficient reason for the issuance thereof where such confession merely calls for review of the issue of fact raised by applicant's plea of not guilty: Howard v. State, 58 Ark. 229, 24 S. W. 8 (1893) ; People v. Vernon, 9 Cal. App. (2d) 138, 49 P.(2d) 326 (1935) ; Powers et al. v. State, 168 Miss. 541, 151 So. 730 (1933). In taking this position here, we do not hold that a confession by a third person, exculpating the petitioner for a writ of coram nobis, is not to be considered a ground for the issuance of the writ in other cases. Again, we are following the pronouncement of Judge Brown, Jr., in Commonwealth v. Valerino, supra, at page 366: ". . . the purpose of the writ is . . . to prevent a miscarriage of justice . . ." Where, however, as in the instant case, the petitioner seeks, by the introduction of a confession made by a third person, to do no more than retry the issue which was raised by the plea of not guilty on the original trial, such confession is not ground for the issuance of the writ.

Finally, we hold that the petitioner has waived her right to the issuance of the writ by her conduct. Aside from the lack of diligence in producing Doughty at her trial, she failed to turn him over to the police authorities when she met him upon the streets of Philadelphia within two to three months after her release on probation or at any time subsequent thereto. Nor did she at that time, or at any time between her first meeting with Doughty on the streets of Philadelphia and the time when he was taken into custody as a result of the astuteness of a Philadelphia policeman, seek to enforce her right to apply for the writ of coram nobis. It was not until after Doughty had been apprehended and sentenced that she complained about the judgment against her. This is conduct amounting to a

waiver of her right to apply for a writ of coram nobis. Accordingly, we enter the following

*Order*

And now, December 18, 1942, upon consideration of the petition for writ of coram nobis residant, answer thereto, and evidence adduced at the hearing thereon, it is ordered and decreed that the application be denied.